## Case No. 216.

### ALLEN v. BLUNT.

[3 Story, 742;[1] 2 Robb, Pat. Cas. 288; 8 Law Rep. 165.]

Circuit Court, D. Massachusetts. May Term, 1845.

PATENTS FOR INVENTIONS—REISSUE—DECISION OF COMMISSIONER — EXPERT TESTIMONY—EQUITY—VERDICT OF JURY.

1. The decision of the commissioner of patents is conclusive as to the law and facts arising under an application for a patent, unless it be impeached for fraud or connivance between him and the patentee; or unless his excess of authority be manifest on the face of the papers.

[Cited in Allen v. Blunt, Case No. 217; Brooks v. Fiske, 15 How. (56. U. S.) 228; Sickles v. Evans, Case No. 12,839; Morris v. Royer, Id. 9,835; Blake v. Stafford, Id. 1,504; Jordan v. Dobson, Id. 7,519; Seymour v. Osborne, 11 Wall. (78 U. S.) 544; U. S. v. Wright, Id. 650; Bridge v. Brown, Case No. 1,857; Chicago Fruit House v. Busch, Id. 2,669; Aultman v. Holley, Id. 656; Smith v. Merriam, 6 Fed. Rep. 718; Combined Patents Can Co. v. Lloyd, 11 Fed. Rep. 151; Spaeth v. Barney, 22 Fed. Rep. 829.]

2. Where a particular authority is confided in a public officer, to be exercised in his discretion upon an examination of facts of which he is the appropriate judge, his decision upon those facts is, in the absence of any controlling provision, absolutely conclusive.

[Cited in Spaeth v. Barney, 22 Fed. Rep. 829; Allen v. Blunt, Case No. 217; Sickles v. Evans, Id. 12,839; House v. Young, Id. 6,738; Seymour v. Osborne, 11 Wall. (78 U. S.) 544; Parham v. American Button-Hole, etc., Sewing-Mach. Co., Case No. 10,713; Chicago Fruit House v. Busch, Id. 2,669; Aultman v. Holley, Id. 656.]

3. A verdict upon an issue, ordered by a court of equity, is not final upon the facts it finds, nor binding upon the judgment of the court, unless it is sanctioned and adopted by the court upon the subsequent hearing on the merits. Quere—Whether a verdict in a suit at law is evidence of anything but the fact that it was rendered, unless a judgment be duly rendered thereon.

[Cited in Allen v. Blunt, Case No. 217; McLaughlin v. Bank of Potomac, 7 How. (48 U. S.) 228; Brooks v. Norcross, Case No. 1,957.]

4. The patent act contemplates two classes of persons, as peculiarly appropriate witnesses in patent cases, viz.—1st, Practical mechanics, to determine the sufficiency of the specification as to the mode of constructing, compounding, and using the patent. 2d. Scientific and theoretic mechanics, to determine whether the patented thing is substantially new in its structure and mode of operation, or a mere change of equivalents; and the second class is by far the higher and most important of the two.

[At law. Action on the case by Ethan Allen against Orisson Blunt and others] for infringing patent [No. 461] for "an improvement in the method of constructing locks for fire arms." Plea the general issue, with a special statement of matters of defence. At the trial it appeared that the original

[1] [Reported by William W. Story, Esq.]

patent was granted on the 11th of November, 1837, and was surrendered for some imperfections in the specifications, and a new amended patent was taken out on the 15th of January, 1841, which was again for a like defect, surrendered, and a new, amended patent was taken out on the 3rd of August, 1844.

Upon the opening of the defence, Gray (with whom was Dexter), for the defendants, took a preliminary objection, that the last (the present) patent was not good as an amended patent, for the specifications attached to the three patents were for different things, and not for one and the same invention; and that consequently the commissioner of patents had exceeded his authority in granting the present patent, and he cited the 13th section of the patent act of 1836, ch. 357.

B. R. Curtis and R. Choate, for the plaintiff, contended, that the present patent was for the same invention as the two former; and they also insisted that the commissioner of patents was the proper judge of the matter, and his decision, in granting the patent, was conclusive.

Before STORY, Circuit Justice, and SPRAGUE, District Judge.

STORY, Circuit Justice. The 13th section of the patent act of 1836, c. 357, enacts, that whenever any patent shall be inoperative or invalid, by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had, or shall have a right to claim as new, if the error has or shall have arisen by inadvertency, accident or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, and the payment of the further duty of fifteen dollars, to cause a new patent to be issued for the same invention for the residue of the term then unexpired, for which the original patent was granted, in accordance with the patentee's corrected description and specification. Now the specification may be · defective or insufficient either by a mistake of law, as to what is required to be stated therein in respect to the claim of the inventor, or by a mistake of fact, in omitting things which are indispensable to the completeness and exactness of the description of the invention, or of the mode of constructing or making or using the same. Whether the invention claimed in the original patent, and that claimed in the new amended patent, is substantially the same, is and must be in many cases a matter of great nicety and difficulty to decide. It may involve considerations of fact as well as of law. Who is to decide the question? The true answer is, the commissioner of patents; for the law entrusts him with the authority, not only to accept the

surrender, but to grant the new amended patent. He is bound, therefore, by the very nature of his duties, to inquire into and ascertain, whether the specification is definite or insufficient, in point of law or fact, and whether the inventor has claimed more than he has invented, and in each case, whether the error has arisen from inadvertency, accident or mistake, or with a fraudulent or deceptive intention. No one can well doubt, that, in the first instance, therefore, he is bound to decide the whole law and facts arising under the application for the new patent. Prima facie, therefore, it must be presumed that the new amended patent has been properly and rightfully granted by him. I very much doubt whether his decision is or can be re-examinable in any other place, or in any other tribunal, at least, unless his decision is impeached on account of gross fraud or connivance between him and the patentee; or unless his excess of authority is manifest upon the very face of the papers; as, for example, if the original patent were for a chemical combination, and the new amended patent were for a machine. In other cases, it seems to me, that the law, having entrusted him with authority to ascertain the facts, and to grant the patent, his decision, bona fide made, is conclusive. It is like many other cases, where the law has referred the decision of the matter to the sound discretion of a public officer, whose adjudication becomes conclusive. Suppose the secretary of the treasury should remit a penalty or forfeiture incurred by a breach of the laws of the United States, would his decision be re-examinable in any court of law upon a suit for the penalty or forfeiture? The president of the United States is, by law, invested with authority to call forth the militia to suppress insurrections, to repel invasions, and to execute the laws of the Union; and it has been held by the supreme court of the United States, that his decision as to the occurrence of the exigency is conclusive. Martin v. Mott, 12 Wheat. [25 U. S.] 19. In short, it may be laid down as a general rule, that, where a particular authority is confided to a public officer, to be exercised by him in his discretion upon an examination of the facts, of which he is made the appropriate judge, his decision upon these facts is, in the absence of any controlling provisions, absolutely conclusive as to the existence of those facts. My opinion, therefore, is, that the grant of the present amended patent by the commissioner of patents is conclusive as to the existence of all the facts, which were by law necessary to entitle him to issue it; at least, unless it was apparent on the very face of the patent itself, without any auxiliary evidence, that he was guilty of a clear excess of authority, or that the patent was procured by a fraud between him and the patentee, which is not pretended in the present case.

The defence upon the merits turned upon two points: (1) That the defendants did not use the same combination as the plaintiff, and consequently there was no violation of his patent. (2) That the invention patented did not belong to the patentee, he not being the first inventor thereof. In the course of the trial, the counsel for the defendant, in support of their defence, offered in evidence the record of a suit in equity between the same parties in the circuit court of the United States, for the district of New York, in which the court had directed an issue upon the same points, which were now in controversy, and the jury found a verdict upon those points in favor of the defendants. But it further appeared upon the record, that no further proceedings were had upon the verdict, and no hearing was had upon the merits of the case by the court; but the plaintiff, by the leave of the court, was allowed to dismiss his own bill without any final hearing thereon.

Curtis and Choate, for the plaintiff, contended that, under these circumstances, the record was not admissible as evidence. Gray and Dexter, for the defendants, contended that it was, being a verdict upon the very points now in controversy.

STORY, Circuit Justice. My opinion is, that the record is not admissible as evidence. No hearing was ever had by the court subsequently to the verdict, and no decree rendered upon the merits of the case. A verdict upon an issue ordered by a court of equity is, in no just sense, final upon the facts it finds, or binding upon the judgment of the court. The court may at its pleasure set it aside, and grant a new trial, or, disregarding it, may proceed to hear the cause and decide in contradiction to the verdict; or it may adopt the verdict, sub modo, and give it a limited effect only. But it can never be known what effect is given to the verdict, or whether any is given to it, until the subsequent hearing upon the merits, and a decree rendered thereon by the court. Under such circumstances, it is plain to me, that this verdict is not admissible in evidence, for it has not been sanctioned or established by the court, and without such sanction it is no proof of any fact, but that it was actually rendered in the case, and not proof of the facts found thereby. Indeed, I entertain great doubts, whether a verdict given in a suit at law is ever evidence of anything, but the fact that it was rendered, unless a judgment has been duly rendered thereon; for judgment may have been arrested therein, or a new trial granted; and then the verdict would become a nullity. Phil. & A. Ev. (Ed. 1838,) pt. 2, c. 3, § 1, p. 618. See 3 Phil. Ev. (Cow. & H.) note 729, p. 1070. But in a court of equity, the verdict, independent of the adoption and sanction of it by the court, can establish nothing in the case.

The cause was afterwards argued to the jury upon the facts.

STORY, Circuit Justice, in summing up to the jury, said: There is one consideration applicable to the evidence, which has been much discussed by the learned counsel, and upon which it is proper that I should say a few words. It is as to the relative weight of the evidence of persons practically engaged in the trade, employment or business of the particular branch of mechanics to which the patent right applies, and the evidence of persons who, although not practical artisans, are thoroughly conversant with the subject of mechanics as a science. It appears to me, that the patent acts look to both classes of persons, not only as competent, but as peculiarly appropriate witnesses, but for different purposes. Two important points are necessary to support the claim to an invention: First, that it should be substantially new, as, for example, if it be a piece of mechanism, that it should be substantially new in its structure or mode of operation. Secondly, that the specification should express the mode of constructing, compounding and using the same in such full, clear and exact terms, "as to enable any person skilled in the art or science, to which it appertains, or with which it is most nearly connected, to make, construct, compound and use the same." Now for the latter purpose, a mere artisan, skilled in the art with which it is connected, may in many cases be an important and satisfactory witness. If, as a mere artisan, he can, from the description in the specification, so make, construct, compound and use the same, it would be very cogent evidence of the sufficiency of the specification. Still, it is obvious, that although a mere artisan, who had no scientific knowledge on the subject, and who was unacquainted with the various mechanical or chemical equivalents employed in such cases, might not be able to make or compound the thing patented, from the specification; yet a person who was skilled in the very science on which it depended, and with the mechanical and chemical powers and equivalents, might be able to teach and demonstrate to an artisan how it was to be made or constructed, or compounded or used. A fortiori he would be enabled so to do, if he combined practical skill with a thorough knowledge of the scientific principles on which it depended. But upon the question of the novelty of an invention, and in reference to this, the identity or diversity of two or more machines, or compounds, it is obvious, that mere artisans, however well skilled in the mere details of their art, might be wholly incapable of giving a satisfactory answer; when a person trained in the science to which it belonged, would, at a glance, ascertain whether the mechanical apparatus or chemical compound was identical in its composition and structure or not, or whether the differences consisted in the mere change of one known mechanical equivalent for another. In short, science alone would be able to answer the question whether or not a particular machine was substantially in its mode of operation new, or identical with another, although with apparent differences of form and structure, which might mislead the unscientific mind. The like considerations would apply to a chemical compound; Sir Humphrey Davy, for example, might, from his vast knowledge of the chemical affinities of different substances, be able to tell, what must be the effect of the combination thereof from their known qualities, and what would be a mere change of known chemical equivalents without any exercise of the inventive powers, although he might never, perhaps, have made the particular compound then before the court. I should, therefore, say to the jury that each of these classes of witnesses was important and competent for different purposes in causes respecting patents for inventions. But that the very highest witnesses to ascertain and verify the novelty of an invention, and the identity or diversity of mechanical apparatus and contrivances, and equivalents, were, beyond all question, all other circumstances being equal, scientific mechanics; that they were far the most important and most useful to guide the judgment, and to enable the jury to draw a safe conclusion, whether the modes of operation were new or old, were identical or diverse.

The judge then proceeded to sum up the facts, and left them to the jury. The jury, not being able to agree upon a verdict, were discharged.

[NOTE. This case was again tried by a jury in June, 1846, and a verdict was rendered for the plaintiff for $1,200 damages. For the hearing on motion for new trial, and for leave to file a bill of exceptions, see Allen v. Blunt, Case No. 217. For other litigation involving this patent, see Allen v. Sprague, Id. 238, and Allen v. Blunt, Id. 215.]