## ELY vs. CRAM and others.

Where a party claims title to property under an act of public officers performed by virtue of special authority conferred on them by statute, to be exercised in their discretion, upon the examination of facts of which they are to judge, it must be *presumed*, until the contrary appears, that the act relied upon was a rightful exercise of their authority by such officers.

In an action to foreclose a mortgage given to the state to secure the unpaid purchase money of school lands sold and conveyed to the mortgagor, the complaint (which was filed in 1861) showed that the whole amount so secured fell due in 1859, and that default had been made in certain payments, and that after the execution of the bond and mortgage, "the same were, for value, transferred by the state to the plaintiff," &c. *Held*, on demurrer,

1. That under chap. 123, Laws of 1859, and sec. 56, ch. 28, R. S., the commissioners of school and university lands were authorized to assign said bond and mortgage, after default as alleged, to any person who had become the purchaser of the mortgaged premises or had obtained a lien thereon.

2. That it was sufficient for the plaintiff to aver, as is done in the complaint, a transfer from the state to himself; and upon the production in evidence of the assignment, properly executed by the commissioners, everything requisite to the regularity of their action would be presumed.

3. That it was for the defendant to aver and prove any irregularity or defect in such assignment not appearing upon the face of the papers.

APPEAL from the Circuit Court for *Racine* County.

The complaint in this action alleges that in June, 1849, the state of Wisconsin sold and conveyed to the defendant *Cram* a certain tract of school land; that *Cram* paid a certain part of the purchase money, and executed a bond to the state for the payment of the residue in ten equal annual installments, with interest payable annually; and also executed a mortgage on the premises to secure the same; that said defendant had made default in the payment of the several installments of the principal, and also in the payment of the interest for the years 1859 and 1860; that "after the execution of said bond and mortgage, the same were, for value received, transferred and delivered by said state of Wisconsin to the plaintiff, who is now the lawful owner and holder thereof," &c. The action is brought to foreclose the mortgage, and for a personal judgment against *Cram* for any deficiency. The mortgagor did

not appear; but several of the other defendants, made parties as having an interest in the mortgaged premises, demurred to the complaint on the ground that it did not state a cause of action in favor of the plaintiff. The demurrer was overruled, and judgment rendered for the plaintiff; from which the demurrants appealed.

*Paine & Millet*, for appellants:

This case is not embraced within the provisions of ch. 123, Laws of 1859, authorizing the school land commissioners to assign mortgages in certain cases. (1.) There was no *loan* by the state, but a *sale* of the mortgaged premises. (2.) It does not appear from the complaint that the assignment of the bond and mortgage was made to the plaintiff *after* default in payment of the mortgage. (3.) The plaintiff is neither a subsequent purchaser nor incumbrancer of the premises, and the commissioners had therefore no power to assign the bond and mortgage to him. (4.) The constitution having created the school land commissioners, and defined in detail all the powers and duties necessary to carry out the object of their creation, the legislature cannot add to or take away from those powers and duties. See section 8, Art. X of the constitution of this state.

*Smith & Keyes*, for respondent.

The following opinion was filed October 25th, 1862.

*By the Court*, COLE, J. The commissioners of the school and university lands, in 1849, sold and conveyed to the defendant *Cram* a tract of land, taking back a bond and mortgage for the purchase money. This bond and mortgage is sought to be foreclosed in this suit. The objection is taken that the respondent cannot maintain the suit because the commissioners had no authority to sell and assign to him these instruments. And whether they had that power is the main question in the case.

By chap. 123, Laws of 1859, the legislature authorized the commissioners to sell and transfer any note and mortgage giv-

en to secure any loan made by the state from the school, university, drainage or any other fund, which should be due and remain unpaid, to any person who had become the purchaser of the real estate mortgaged subsequent to the giving of such mortgage. Here is express authority given the commissioners to sell and assign a mortgage given to secure a loan. Now it is true the mortgage in this case was given to secure the purchase money; but can any valid reason be assigned why the commissioners should have the power, under certain circumstances, to sell and transfer a mortgage given to secure a loan, and not have the power, under like circumstances, to sell and transfer one given to secure the purchase money? We certainly cannot imagine any reason why the commissioners should have the authority to assign and sell one class of mortgages, and be denied the power to sell and transfer the other class, and the counsel for the appellants failed to suggest any. Nor do we think the legislature intended making any such distinction as is contended for. The object of the law seems to be to authorize the commissioners to sell these mortgages in certain contingencies. And although a mortgage for the purchase money may not come within the strict letter of the statute, it is clearly within its spirit and intent. We feel that we should be doing violence to the intention of the legislature if we should hold that the commissioners had no power to sell and assign the mortgage in this case. By section 25, chap. 24, R. S. 1849, it is provided that a purchaser of school lands sold upon credit might—when the balance of the purchase money became due —retain the same as *a loan* from year to year by paying the interest on that sum annually in advance, thus showing an intention on the part of the legislature to place such a transaction on the same footing precisely as an original loan. And we see no reason why it should not be so considered and treated by the commissioners. Nor can we see that this statute, authorizing the commissioners to sell these mortgages, is in conflict with any provision of the constitution.

The judgment of the circuit court must therefore be affirmed.

A motion for a rehearing was granted at the January term, 1863, and the following opinion, affirming the judgment of the circuit court, was filed at the June term of the same year.

*By the Court*, DIXON, C. J.    A rehearing was granted in this cause, upon the ground that the complaint contains no averment that the plaintiff was a subsequent purchaser or incumbrancer of the mortgaged estate at the time of the transfer of the mortgage from the state to him.    As was observed in the former opinion, the act authorizes the commissioners to make the transfer to "any person who may have become the purchaser of such real estate, subsequent to such mortgage to the state, or who may have acquired any lien upon the same by mortgage, judgment or otherwise.    A careful investigation of the point has satisfied us that there was no error in the former decision, and that the judgment of the circuit court must still be affirmed.    The act fully entrusts the commissioners with authority, upon application made for an assignment, to investigate and determine the sufficiency of such application, and whether the applicant belongs to the class of persons named in the act, and is entitled to the benefits of its provisions. The commissioners are bound, by the very nature of the duties imposed, to inquire into and ascertain, both in point of law and fact, whether the applicant is a purchaser subsequent to the mortgage, or an incumbrancer by mortgage, judgment or otherwise.    They must decide the law and facts arising upon the application.    But the act, furthermore, declares that they "shall require such evidence as they think proper, of the interest in the premises of the person making application for such assignment, and shall make and prescribe such rules and regulations in relation thereto as they may think proper to protect the interest of the state, of the mortgagor and assignee."    This express provision effectually removes all

doubt as to the nature and scope of the powers conferred upon the commissioners. Clothed with authority to inquire and determine, in the first instance, whether the applicant is entitled to a transfer under the statute, the same effect must be given to the decision of the commissioners as is prescribed by law in other cases where special authority is confided in public officers, to be exercised in their discretion upon the examination of facts of which they are to judge. Nothing appearing on the face of the papers to the contrary, their decisious are *prima facie* regular and valid. The rightful and proper exercise of the authority is presumed. This principle seems to be well settled. *Allen vs. Blunt,* 3 Story, 742; *Wray vs. Doe,* 10 S. & M., 452; *Den vs. Den,* 6 Cal., 81. It is, therefore, for the party claiming irregularity or excess of authority in such special cases, to aver and prove it. For the opposite party, or him claiming title by virtue of such special authority, it is enough that he state the fact and produce the requisite evidence of the decision of the proper officers. And in this case, it was enough for the plaintiff, as he has done, to aver a transfer from the state to himself, and then upon production of the assignment properly executed by the commissioners, which is the only evidence of their decision, every thing requisite to the regularity of such assignment would be presumed. A violation of duty on the part of the commissioners who executed the assignment, cannot be presumed.

This case cannot be distinguished in principle from the many in which it has been held that a grant from the public raises a presumption that all prerequisites have been complied with; that a warrant is evidence of the existence of an entry, &c. *Polk's Lessee vs. Wendell,* 5 Wheat., 293; *Bagnall vs. Broderick,* 13 Peters, 448; *Wray vs. Doe, supra.*

Upon the other question, whether the mortgage in suit is to be treated as given for a "loan made by the state," which the counsel for the appellants took occasion also to re-argue, we have little to add to the remarks contained in the former

opinion. We rested our decision upon the clause of the statute there referred to, and now found as section 56, chapter 28, R. S., which authorizes the purchaser of any such land, when the balance of the purchase money therefor shall become due, to retain the same *as a loan* from year to year, on payment annually, in advance, of the interest on the sum due. This we thought sufficient evidence of the intention of the legislature to treat these mortgages as for moneys loaned, and to bring them within the operation of the act authorizing the commissioners to assign. It was upon this ground alone that we held that the authority of the commissioners extended to the mortgage in question, and not upon the ground, as counsel seemed to suppose, that it would be very convenient and proper for the commissioners to have such power, provided the legislature had seen fit to grant it.

Judgment affirmed.