# DECISIONS

OF THE

## SUPREME COURT OF MISSOURI.

### FIRST JUDICIAL DISTRICT,

AUGUST TERM, 1841.

---

### DUNNICA, Adm. of Colgin, v. SHARP.

1. In an action for a breach of covenant, for the conveyance of land, where the time of performance has been extended, the right of action accrues as soon as the covenantor becomes bound by his covenant to make the conveyance, and if he is not able to do so, for want of a good title to the land, it is not necessary for the covenantee to offer to rescind the contract, or to make a demand of the deed, before suit brought.

2. In this case the court held the measure of damages to be the purchase money, with legal interest, without any deduction for the rents and profits. It is in general held, that when the vendor's title is altogether defective, he can recover nothing from the vendee by way of rents and profits, because the vendor would be liable to the owner of the land for rents and profits.

Appeal from the Cole Circuit Court.

*A. Leonard, for Appellee.*

1st. Leave to file three rejoinders to the plaintiff's third replication was properly refused, because: First, The defendant did not show that it was necessary to the attainment of justice, that such leave should be granted. Rev. Stat. Mo., " Practice at Law," 3d art. sec. 30. Second, The first re-

joinder was bad in substance, and the second and third inconsistent with one another.

2d. The questions propounded to the witness, Williams, as to the plaintiff's proving while witness was in possession, knowledge of the boundaries of the land, was properly excluded, as wholly irrelevant to any matter in issue.

Third. The proof proposed by the defendant of his vendor's, his own and his vendees continued possession of the land since the year 1806, under Duckoginth's claim, was rightly excluded.

The only legal purpose of this proof was to establish a legal title in fee in the defendant at the time of his tendering the deed to the plaintiff, and for this purpose it was altogether incompetent, because, 1st, although in an action of ejectment possession of land is evidence of right to the possession, it is no evidence of a legal title in fee. 2d. If under other circumstances, the evidence tendered would have been evidence of a legal title in fee in the defendant, it afforded no such presumption in the present case, because the defendant had already given evidence that the legal title was in Roy's heirs, under whom he claims. 3d. A purchaser is entitled to a title free from doubt. Hortley v. Pihall, Puke's N. P. c. 178; Wilde v. Forte. 4 Taunt, 341; Elliott v. Edwards, 3 Bos & Pull, 181.

Fourth. The fact of the pendency of a suit for a breach of the covenant to convey; at the time the plaintiff demanded a conveyance from the defendant, was properly excluded from the jury as irrelevant to any of the issues submitted to them.

Fifth. The several instructions that were asked by the defendant, and refused by the court, were properly disallowed.

1st. The fact, that the plaintiff demanded a conveyance, was admitted by the pleadings, and for the reason the second instruction was properly rejected.

2d. The third, fourth, and seventeenth instructions were not only incorrect in point of law, but were also mere abstract propositions, wholly irrelevant to any of the evidence given.      .   .   .

3d. The specification by the plaintiff of one objection to the deed at the time it was tendered, did not preclude him from insisting afterwards upon the defendant's want of title, and therefore the seventh instruction was properly disallowed.

4th The twelfth instruction was incorrect in point of law, and if it were correct, there was no evidence given that would have warranted this instruction.

5th. The measure of damages upon the breach of a covenant to convey is not confined to the consideration paid, with interest, to be calculated from the time of the demand of the conveyance, and therefore the thirteenth instruction could not have been lawfully given.

6th. A purchaser's right to real damages, or to interest upon his purchase money, does rest upon his having before the commencement of the suit, rescinded, or offered to rescind the contract, or upon his having rescinded, or offered to rescind the contract and deliver up the possession of the land, or upon having given the vendor notice of his intention to abandon the contract, and having required the vendor to return the purchase money, and therefore the fourteenth, fifteenth, and sixteenth instructions were properly rejected.

7th. The decree in equity between the defendant and the unkown heirs of Roy, is no evidence of the existence of a legal title to the land in the defendant at the time of the tender of the deed, and for this reason the eighteenth instruction was rightly withheld.

8th. The right of a purchaser, where there has been a failure to convey, to any interest upon his purchase money, does not depend upon the fact that he has surrendered or offered to surrender the possession of the land, and therefore the nineteenth instruction was properly refused.

9th. The measure of damages on a breach of a covenant to convey, where there has been no fraud or misconduct on the part of the vendor, is the consideration paid, with interest from the time of its payment, and therefore the twenty-first instruction was properly refused. Flurean v. Thornhill, Sir W. Black. Rep., 1078; Hopkins v. Grazebrook, 6 Barn. & Crop, 31; Walker v. Moore, 10 Barn. & Crop, 416:

AUGUST TERM, Robards v. Netherland, 3 Bibb, 529, 18 Law Library, 60
1841.       and 61.

Dunnica          10th. The penalty contained in this obligation does not
v.          limit the defendant's liability, and if it do, the withholding
Sharp.      the twenty-second instruction is no ground of reversal, as
the damages actually assessed were less than the penalty.

11th. Where there is a breach of a covenant to convey
on request, the interest is to be calculated from the time of
the payment of the purchase, and is not confined to the
time of the demand, and therefore the twenty-third instruc-
tion was rightly refused.


*Opinion of the Court by Tompkins, Judge.*


In the circuit court Sharp was plaintiff, and had a judg-
ment, to reverse which Colgan appealed to this court.

The action was brought on a covenant, executed on the
1st November, 1818, by Colgan, to bargain and sell to Sharp
forty arpens of land in the village of Cote Sans Dessien, "it
being the possession which Colgan had purchased of the
then late Jesse Evans;" Colgan too, by said writing, conve-
nanted to warrant and defend the said land to the said Sharp,
his heirs, and assigns, and to attend at the house of said
Sharp on the first day of January, 1819, to perfect said
agreement, by giving his obligation for securing and con-
firming it in general warranty to said Sharp, his heirs and
assigns, and to put Sharp forthwith into possession of the
premises, and as the same was rented to one Asa Williams,
Sharp was to receive all the rents and profits arising from
the tenancy of Williams, For the performance of their
respective covenants, Colgan to convey, &c., and Sharp to
pay the consideration, the parties respectively bound them-
selves in the sum of one thousand dollars.

The breaches assigned are,

1st. That Colgan did not on the first day of January next
after the date of the said covenant, or at any other time,
perfect the said agreement, by giving the necessary obliga-
tion for securing and confirming the title to the said land to
said Sharp, and he had not yet done it.

2d. That he, Sharp, has never received the rents and profits, &c.

3d. That said Colgan has not paid the said Sharp the said sum of one thousand dollars.

Colgan pleaded, 1st, that at the time appointed he went to the house of Sharp to make a deed according to the agreement, and offered to execute it, but that the plaintiff then waived the same, and excused the defendant, agreeing that the original covenant, called a memorandum of an agreement, if recorded, would be as good as a deed made in pursuance of the said memorandum of an agreement, with an averment that from that time hitherto he had been ready and willing, and still was so, to make a deed.

2d plea. After stating the same preliminary facts, it is averred that by mutual consent the time of making the deed was postponed, and that after the first day of January next, succeeding the date of said agreement he, Colgan, had made and tendered a deed to Sharp, and that Sharp refused to execute it, and that he is still willing to make one.

3d plea. That at the time of making the agreement he did put the plaintiff into the possession of the premises according to agreement.

4th plea. That the defendant did recover all the rents and profits, &c.

5th. That before the commencement of this action the defendant paid to said plaintiff said sum of one thousand dollars.

The plaintiff replied to the first plea, first, that at the time the defendant offered to make the deed the title in fee was not in him, and concluded to the country.

2d. That the defendant did not, within a reasonable time after making said supposed parol agreement, offer to make a deed according to the original agreement.

3d. That after said supposed verbal agreement, and before the commencement of this suit, the plaintiff demanded a deed, and the defendant refused to give one agreeably to the original agreement.

4th. That the defendant did not agreeably to the original contract, tender to the plaintiff at his house a deed, and the

plaintiff did not then and there waive the same or excuse the defendant from making said deed.

To the second plea :

1st. That the defendant did not after the 1st day of January, 1819, and before the commencement of this suit, execute a deed of conveyance of this land, and tender it agreeably to contract.

2d. That at the time of the alleged tender, and refusal to receive a deed, according to agreement, the title in fee was not in the defendant.

3d. Same as the first replication to the first plea.

4th. That after the time of making said supposed parol agreement, and before the alleged tender of the deed, a reasonable time to perfect the original agreement had elapsed, and the defendant did not, within such reasonable time after making said supposed parol agreement, and before the alleged subsequent tender, perfect the original agreement.

5th. Same as the 4th replication to the first plea.

To the third, fourth, and fifth pleas, the plaintiff took issue. To the replications the defendant rejoined as follows :

To the first and second replications to the first plea, and to the third replication to the second plea, the defendant demurred.

To the fourth replication to the first plea, and to the first, second, and fourth replications to the second plea, the defendant joined issue in fact.

To the third replication to the first plea, the defendant rejoined, traversing the facts stated in such replication, and concluded to the country.

To the fifth replication to the second plea, the defendants rejoined, traversing the facts stated in that replication, and concluded to the country.

The plaintiff joined the defendants demurrers to the first and second replication to first plea, and to the third replication to the second plea, and surrejoined to the rejoinder to the third replication to the defendant's first plea.

The cause presented in the circuit court three issues of law, involving the sufficiency of the following pleadings on the part of the plaintiff; of these it is useless to say any

thing, as the correctness of the decision in the circuit court cannot be reviewed, the judgment being ultimately for the plaintiff, against whom the demurrers were decided.

On the trial of the cause, the plaintiff gave in evidence the writing declared on, that he had paid the consideration, and that he had demanded a deed of conveyance. All of the evidence given by the defendant, material to be here noticed is, that on the first day of January, 1819, according to his written agreement, Colgan went to the house of Sharp, and, after some conversation on the subject of making a deed for the premises, it was agreed betwixt them, that a deed made by Colgan would be no better than the covenant already executed by him and Sharp would be, if it were recorded; and Sharp verbally agreed with Colgan to postpone the making of the deed. No definite time of postponement was agreed on. Colgan, it appears, had been before sued on the same cause of action; and pending this action Sharp had demanded a deed, after he had verbally dispensed for an indefinite period, with the making of the deed by Colgan. Colgan, in the year 1836, tendered to Sharp a deed, which Sharp would not accept. The evidence of Colgan's title to the land covenanted to be sold, is as follows: On the 30th day of December, 1830, Baptiste Duchouquette addressed a petition to M. Delassus, lieutenant governor of the province, praying a grant to him of four thousand arpens of land, to be taken within certain limits therein mentioned. To this petition the lieutenant governor, after making some preliminary observations, answered in these words: "I do grant to him, under the same boundaries as he asks [the land] in fee simple for him, or any other who may represent him his rights, dispensing him of the survey on account of the existing great distance, until some concession, being granted in the vicinity, will oblige him to show his lines, and the surveyor of this Upper Louisiana, Don Antonio Soulard, shall take cognisance of his title, for his intelligence and government, in what concerns him; after which, the party interested shall have to solicit the title in form from the lieutenant general of these provinces, to whom alone corresponds,

by royal order, the distributing and granting all classes of lands of the royal domain."

Mean conveyances from Duchouquette down to Colgan were shown, and evidence of possession, held by those claiming under Duchouquette for a long time, was offered by the plaintiff, but rejected by the court. Many instructions were asked, and exceptions taken, to the refusal to give them; but the defendant's counsel have narrowed their objections down to the refusal of the court to give the following viz:

That the court refused to permit the defendant to give evidence of a prior suit pending on the same breach of covenant by the plaintiff, against the defendant, and has prevented the defendant from complying with a demand made pending the suit, for a specific performance of the contract.

The court erred in instructing the jury, that although the parties waived to an indefinite time the making of a deed or obligation for the land according to the covenant, no demand after waiver need be proved to have been made by the plaintiff from the defendant, before suit brought.

The court erred in instructing the jury, that although a demand was necessary by the plaintiff to make a deed, yet the plaintiff could recover damages for interest before such demand was made.

The court erred in instructing the jury that the plaintiff could recover the consideration money and interest, rescinding or offering to rescind [the contract,] and without delivering, or offering to deliver the possession of the land covenanted to be conveyed by the defendant.

The court erred in instructing the jury that although the plaintiff possessed, occupied and enjoyed the land, before demand of title or suit brought, yet the plaintiff could recover interest upon such purchase money pending such occupancy.

The points necessary to be settled in this case are:

1st. Did Colgan show in himself any title to the land.

2d. After Sharp agreed to prolong the time of making the deed by Colgan, did it become necessary for him to make demand of a deed to entitle him to his right of action against

Colgan? and if so, from what time would he be entitled to interest on the purchase money?

3d. Was it necessary for Sharp to offer to rescind the contract in order to entitle him to recover the consideration money and interest in an action for a breach of covenant.

1st point. It may not be amiss to observe that it is very difficult to translate correctly into the English language the words used by the lieutenant governor Delassus, in answer to the petition of Duchouquette. The official correspondence of the lieutenant governor, we are bound to believe was expressed in appropriate language. It is well known that the translator of the petition, and the answer thereto, is a man of education and strict integrity. Yet because he was not a lawyer, and because of the difficulty of finding words in the English language corresponding in meaning with those used by M. Delassus, he is made to say that he gives the land to Duchouquette in fee simple. But we learn from the following part of the communication that he had no authority to do more than authorise Duchouquette to settle on the land, and to direct the surveyor of the province to mark out the boundaries; after which, continues the lieutenant governor, "the party interested will have to solicit *the title in form* from the lieutenant general of these provinces of Louisiana, to whom alone corresponds by royal order, the distributing and granting all classes of lands of the royal domains."

There has been no evidence given, that this land ever was surveyed previous to the occupation of the country by the United States; nor does it appear that it ever was confirmed by any act of congress, or indeed that it was ever recommended by any board of commissioners for confirmation. We are then driven to the conclusion that the title remains in the United States, and that the possession of Colgan, and of those under whom he claimed, was tortious, and consequently a deed from him can convey no right or title. It could answer no purpose then, either to offer to rescind the contract entered into with Colgan, or to make any demand of a deed after Sharp had agreed to prolong the time of making a deed.

In an action for a breach of covenant, for the conveyance of land, where the time of performance has been extended, the

AUGUST TERM, 1841.

Dunnica
v.
Sharp.

*right of action accrues as soon as the covenantor becomes bound by his covenant to make the conveyance, and if he is not able to do so for want of a good title to the land, it is not necessary for the covenantee to offer to rescind the contract, or to make a demand of the deed, before suit brought.*

The action is covenant, and the right of action accrued as soon as he, Colgan, became liable to make the deed, if he were unable to do it.

One would suppose that the only possible inquiry in such an action would be the amount of damages. To prove that the plaintiff, Sharp, should have offered to re-deliver the premises, and could recover no interest, but would lose his interest in consideration of his enjoying the rents and profits of the premises, we are referred to the cases of Wickliffe v. Clay, 1st. Dana, 594; and Taylor v. Porter, same vol. 423–4; and Bullock v. Bremiss, 4th Marshall, 424; which were all cases in Chancery, and where the vendors had some color of right to the property sold, and that too was improved property. In the strictness of legal proceedings, Colgan, defendant in this action of covenant, could get no allowance for rents and profits. He must have resorted to a court of equity for that and all other relief; but in order to do him justice in this court, the circuit court, with the assent of Sharp, the plaintiff, instructed the jury to deduct the value of the rents, &c., from the interest on the purchase money. When this case was formally before this court, it was said said by the court that legal interest and purchase money was the proper measure of damages. See 4th vol. Mo. Dec. p. 263.

And as above observed, the jury were directed to deduct from the interest the amount of the rents and profits. Thus the circuit court, the plaintiff's counsel not resisting by this instruction, gave Colgan all he could have obtained, either in a cross action at law, or by a decree in a court of chancery. It is in general held, that when the vendor's title is altogether defective, he can recover nothing from the vendee by way of rents and profits, because the vendee would be liable to the proprietor of the land; but the United States appear in this case to have been the proprietors, and Colgan has been treated by the circuit court, so far as the rents and profits are concerned, as if he had a right to receive rent. In every view I have been able to take of the case, the decisions of the court have been such that Colgan had no room to complain.

*In this case the court held the measure of damages to be the purchase money with legal interest, without any deduction for the rents and profits. It is in general held that, when the vendor's title is altogether defective, he can recover nothing from*

I am therefore of opinion that the judgment ought to be affirmed, and the other judges concurring, the judgment of the circuit court is affirmed.

the vendee by way of rents and profits, because the vendee would be liable to the owner of the land for rents and profits.