## Henry Hammond v. Catherine Hannin.

*Evidence: Ratification of land contract: Authority of agent.* The authority of an agent to execute a written contract for the purchase of lands, may be shown by an oral ratification; and the acts of the principal, from which such ratification may be inferred, are competent evidence for that purpose.

*Evidence: Payment of taxes.* The payment of taxes may be proved by parol. Although it is true that the collecting officer's receipt is an official document, and may be used as primary evidence, this does not preclude other proof.

*Breach of contract to convey land: Measure of damages.* Where a vendor in a contract for the sale of land acts in bad faith, the proper measure of damages is the value of the land at the time of the breach; but where the contract was made in good faith, and the vendor is unable to perform it, the measure of damages will be the consideration money and interest, with, perhaps, the costs of investigating the title.

*Heard July 9. Decided October 6.*

Error to Van Buren Circuit.

This was an action of *assumpsit* brought by Catherine Hannin in the Circuit Court for the County of Van Buren, against Henry Hammond, to recover damages for the breach of a contract to sell and convey to the plaintiff a parcel of land. The plaintiff averred in her declaration that she had sustained special damages by reason of the expenditure of large sums of money on the land for improvements and payment of taxes, and the loss of the profits upon the sale of a portion of the premises. The defendant pleaded the general issue. The facts alleged by the defendant, by which he was prevented from performing the contract, and the rulings and charge to the jury of the Circuit Judge, on the trial, on which the questions brought into this Court for review arise, are stated in the opinion of the Court.

*Newton Foster* and *M. J. Smiley*, for plaintiff in error.

1. It was error to admit oral evidence to prove an agency to purchase lands by contract.

2. It was error to admit parol evidence to prove the amount paid for taxes on said premises when the tax receipts were in existence, without accounting for their absence. *a.* Tax receipts are required by law to be given by the township treasurer on payment of the taxes, and are original evidence.—*Comp. Laws*, § *843 ; Johnstone v. Scott, 11 Mich., 232. b.* The giving a receipt by the township treasurer is an official act.—*Johnstone v. Scott, 11 Mich., 232. c.* Parol evidence cannot be substituted for them to prove the amount paid unless their loss be first proved.—*1 Greenl. on Ev.*, § *84 ; Harris v. Whitcombe, 4 Gray, 433.*

3. It was error not to allow the defendant, Hammond, to testify as the price for which said land was sold at auction sale as evidence tending to show its value. *a.* When the auctioneer knocked down the property, the terms of the contract were fixed.—*1 Par. on Cont. 496. b.* In a sale of land at auction, the consideration cannot be changed from that at which it was struck off. *c.* Hammond being present at the sale and hearing the bids, and knowing when the auctioneer struck off the land, would be competent to testify as to the highest amount bid. *d.* Evidence of what the property sold at auction is admissible as having a tendency to prove value.—*Smith v. Mitchell, 12 Mich., 180 ; Campbell v. Woodworth, 20 N. Y., 499.*

4. There was error in not admitting the record of the deed given by the guardian of John M. Gordon to the vendor of said land at said auction sale to show the consideration for which said land sold, for the purpose of proving the value of said land. *a.* The consideration stated and acknowledged in a deed is presumed to be the true

value agreed to be paid.—*2 Washb. on R. Propt., 2d Ed., (619) 658; 4 Kent, (465); Amden v. Manchester, 40 Barb.* *b.* A deed is the final consummation of the transaction, and embodies the agreement of the parties, hence the best evidence. *c.* The deed was duly acknowledged, and the truth of its recitals and its validity are presumed.—*1 Greenl. Ev.* § *38; Dewey v. Dewey, 1 Met., 349.* *d.* For the purpose for which this record was offered it was immaterial whether the court had jurisdiction or not so long as it appeared that there had been a regular sale.

5.   It was error to refuse to instruct the jury that unless the defendant acted in bad faith in refusing to give a deed of said land according to the terms of the contract, the measure of damages is the money paid and the interest thereon.—*3 Par. on Cont., 228; Sedgw. on Dams., 2d Ed., 202; Flureau v. Thornhill, 2 W. Bla., 1078; Walker v. Moore, 10 B. & C., 416; Worthington v. Warrington, 8 Man. G. & S., 134; Conger v. Weaver, 20 N. Y., 140; Munn v. Baldwin, 2 Wend., 399; Peters v. McKeon, 4 Denio, 546; Fletcher v. Button, 6 Barb., 646; Key v. Key, 3 Head (Tenn.), 448; Sweem v. Steele, 5 Iowa, 352; Stewart v. Noble, 1 Greene (Iowa), 126; Thompson's v. Guthrie's, 9 Leigh, 101; Combs v. Tarlton, 2 Dana, 465; Allen v. Anderson, 2 Bibb, 415; 2 Blackf., 147.* *a.* That on an executory contract for the sale of land, where there is no fraud on the part of the vendor, if the sale falls through in consequence of a defect of title, the measure of damages is substantially the same as it is in the case of an executed sale on covenants for seisin and for quiet enjoyment.— *Sedgw. on Dams., 2d Ed., 204; Munn v. Baldwin, 2 Wend., 399; Peters v. McKeon, 4 Denio, 546; Allen v. Anderson, 2 Bibb, 415; Fletcher v. Button, 6 Barb., 646; 2 Blackf., 147; Sweem v. Steele, 5 Iowa, 352; Stewart v. Noble, 1 Greene (Iowa), 26.* *b.* That on an executed contract of sale

of lands, if the title fails, the measure of damages is the consideration money and interest.—*4 Kent, 475, et. seq; Staats v. Ten Eyck, 3 Caines, 111; Smith v. Strong, 14 Pick., 128; Pitcher v. Livingston, 4 Johns., 1; Bennet v. Jenkins, 13 Johns., 50; Sumner v. Williams, 8 Mass., 162; Byrnes v. Rich, 5 Gray, 518; 1 Sugd. on Vend., 41 Penn. St., 206; 34 Penn. St., 418; Ch. on Cont. 278; Hall v. Delaplaine, 5 Wis., 206; Lester v. French, 6 Wis., 580.*

In this case the Circuit Judge charged the jury that the question of bad faith was not in issue, therefore, it must be conceded that the defendant, Hammond, acted in good faith, and there was no attempt on his part to commit a fraud upon the plaintiff. It was a mutual mistake of each acting innocently, and it may be justly said that it was the duty of the purchaser to examine the title, and find out the authority of the vendor to sell them. One should not be liable to the other for their mutual fault, neglect, or mistake.

*T. H. Stephenson* and *H. F. Severens*, for defendant in error.

The statute of frauds only requires that the contract for the sale shall be executed by the vendor or some person by him authorized in writing.—§ *3179, Comp. L.* And it is entirely settled that a written authority is not necessary where a seal is not necessary to the validity of an instrument executed under the authorization.—*Sweetzer v. Mead, 5 Mich., 107; Worrall v. Munn, 1 Seld., 229; Despatch Line v. Bellamy Man. Co., 12 N. H., 205, 234-7; Hunter v. Parker, 7 M. & W., 322.*

It is next assigned as error that the witness of the plaintiff was allowed to answer the question, what amount taxes she paid, " as a charge" against defendant. The objection in the Court below was: 1st, that it was "immaterial," and 2d, that the proof offered was "not the best

evidence." It does not appear that the proof was offered specifically to establish a "charge" against defendant. But if that is to be inferred, the objection should have pointed out the ground on which it was founded, and not have left the Court and opposing counsel to grope after the reasons for it.—*Camden v. Doremus, 3· How., U. S., 515; Jackson v. Hobby, 20 Johns., 357, 362–3 ; Elwood v. Deifendorf, 5 Barb., 398; Owen v. Frink, 24 Cal., 171; Leet v. Wilson, 24 Cal., 398 ; Mumford v. Thomas, 10 Ind., 161; Aurora v. Cobb, 21 Ind., 492; Dewey v. The Northwestern Uni'ty, 16 Ind., 220; White v. Chadbourne, 41 Me., 149.*

The objection, that the proof offered was not the best ·evidence, has no force. The tax receipt is no better evidence than the testimony of the witness.—*Dewitt y. Crocker, 8 Greenl., 239; 1 Greenl. Evidence, § 90.*

It is also claimed that there was error in permitting the plaintiff to show that she had contracted to sell certain lands included in her purchase. It will be seen that the Court admitted the testimony, for the single purpose of showing that plaintiff had ratified the contract, executed in her behalf by Bartly Hannin, as her agent. And it was admitted because the defendant had objected that the execution of the contract was not shown to be authorized by her.

The only remaining, but, indeed, the vital question in the case, is,—What is the measure of damages in the case of a breach by the vendor of an executory contract for the sale of real estate ? As the record discloses, there was no defense to the action, and the case was confessedly little more than an inquest of damages, the defendant insisting throughout that the plaintiff could recover only the amount of the consideration and interest.

The early English case of *Flureau v. Thornhill, 2 W. Black., 1078,* held that the measure of damages in such

cases was the consideration and interest from the time of payment. Scarcely a decided case in the reports appears more unsatisfactory in the manner of decision, and it is not surprising that the English courts, though they profess themselves bound by it, have sharply criticised the case and have narrowed the domain of its authority to bounds so narrow that the courts there almost always, upon some pretext, find themselves able to go around it.

Its authority was deeply trenched upon in the case of *Hopkins v. Grazebrook, 6 B. & C., 31.* In *Simons v. Patchett, 7 El. & Bl., 572,* Lord Campbell pronounces the rule of *Flureau v. Thornhill* anomalous. And finally, after running the gauntlet in a score of cases where the Judges fritter and explain it away, it meets, in the latest reported case upon the subject in England, the most pointed condemnation and almost open rebellion, in *Engel v. Fitch, Law Rep., 3 Q. B., 314—4 Q. B., 659.*

Upon the whole, it appears that the only reason that is invoked in support of the limited authority of *Flureau v. Thornhill* is the unexpected difficulty which often arises from the complicated condition of titles to real estate in that country, a reason which does not exist here.

Some courts in this country have followed *Flureau v. Thornhill,* generally without examining the basis of the decision, but the doctrine has been constantly losing ground, and has been repudiated by the Supreme Court of the United States, and by very many of the State courts.— *Hopkins v. Lee, 6 Wheat., 109 ; Wells v. Abernethy, 5 Conn., 222 ; Barbour v. Nichols, 3 R. 1., 187 ; Newson v. Harris, Dudley, Ga., 180 ; Bryant v. Hambrick, 9 Ga., 133 ; McKee v. Brandon, 2 Scam., 339; Gale v. Dean, 20 Ill., 320 ; Nichols v. Freeman, 11 Ired., 99 ; Whiteside v. Jennings, 19 Ala., 784; Cammell v. McLean, 6 Har. & Johns., 297 ; Warren v. Wheeler, 21 Me., 484 ; Boardman v. Keeler, 21*

*Vt.*, *77; Loomis v. Wadhams, 8 Gray, 557*. To which add
*1 Scam., 310; 21 Ga., 504; 9 Ala., 252; 9 Gill, 260; 4
Md., 508; 5 Dutch., 112.* And upon the same side is to
be ranked the high authority of Mr. Sedgwick.—*Sedgwick
on Damages, 3d ed., 185, n. x. 187, 188, 204, 210.*

The notion of measuring damages for a breach of con-
tract, by the good faith of the vendor, or the accidents
which surround him, has nothing in it of justice to the
vendee, and shifts all the risk of the vendor's being able to
perform, from the party upon whom by every principle of
justice it belongs, and places it upon the party who is
ready and willing to perform his contract. The absurdity
and injustice of the doctrine is shown by the cases in those
courts where it is adopted, which hold that in an action
by the vendor against the vendee, the measure of damages
is the difference between the value of the land and the
price agreed to be given.

Upon the facts in the case at bar it is within the excep-
tions which have been established in the rule of *Flureau v.
Thornhill*, by the later cases in England, and in the States
where the English rule is followed. See especially *Hopkins
v. Grazebrook, 6 B. & C., 31; Robinson v. Harman, 1
Exch., 850; Engel v. Fitch, Law Rep., 3 Q. B., 314;
Brinkerhoff v. Phelps, 43 Barb., 469; Sweem v. Steele, 5
Ia., 352.*

Whatever weight the cases which hold the confessedly
anomalous rule may have in the tribunals that are so
unfortunate as to be bound by them, this Court has
declared in *Caldwell v. Gale, 11 Mich., 67*, that it does not
hold itself bound by adjudications outside of the State,
unless they appear to be warranted by the fundamental
principles of the common law.

It would seem that this Court has already gone far
toward deciding this point, in the cases upon the rule of

measuring damages hitherto decided by it. It is plainly deducible from the cases in this Court, that the principle which the Court has invariably maintained and endeavored to establish as uniformly applicable to those cases, where the damages were capable of measurement, is that of awarding to the injured party compensation equivalent to the actual damages which he has sustained.—*Allison v. Chandler, 11 Mich., 542; Burrill v. Saginaw Co., 14 Mich., 42; Warren v. Cole, 15 Mich., 265; Jaquith v. Hudson, 5 Mich., 123.*

COOLEY, J.

The material facts in this case are as follows: On September 10, 1864, Hammond contracted to sell to Hannin an eighty acre lot in the County of Van Buren, for the sum of five hundred dollars, of which one hundred and twenty dollars were to be paid down, and the balance in subsequent installments. The contract was in writing, and was signed and sealed on behalf of Hannin, by Bartly Hannin, her husband, who had oral authority for the purpose. Hannin took possession and cut and sold off considerable timber, paid taxes for two years, and gave contracts to two persons for the sale to them of different parcels of the premises.

The legal title to the land appears to have been, at the time the contract was entered into, in one John M. Gordon, an insane person, of whom one Mickle was committee. T. W. Mizner, Esq., of Detroit, was acting as agent for Mickle, and as such sold the lands to Hammond, who appears to have purchased in good faith, and in the belief that he was to obtain a good title. The conveyance, however, was not yet made. Hannin paid Hammond the whole amount of the purchase money agreed to be paid by her, except one hundred and three dollars, and on September

14, 1866, tendered payment of this sum and demanded title; but Hammond having at that time discovered that Mickle had no authority, as committee, to make sale of lands in Michigan, declined to execute a deed on this ground, and Hannin then brought action against him to recover damages for breach of his contract to convey.

The main question which has been discussed upon this record, regards the proper measure of damages; but there are some questions of minor importance which may properly be considered first. The defendant objected to oral proofs of the authority by the plaintiff to her husband to sign the contract on her behalf, but the objection was overruled. If this evidence had been all that appeared to connect the plaintiff with the contract, I should not be satisfied of the correctness of this ruling. Our statute of frauds requires the authority of the agent acting for another in the sale of lands to be in writing (*Comp. L.*, § *3180*); and though, perhaps a strict construction of the section would confine its operation to the agent of the vendor alone, I am inclined to think that by necessary implication, the authority of the agent of the vendee is to be evidenced in the same manner.—*Bro. Stat. Fr.*, § *263*. It was not essential, however, that the contract should be under seal, and an oral ratification of it afterwards was sufficient.— *Maclean v. Dunn, 4 Bing., 722 ; Hunter v. Parker, 7 M. & W., 322 ; Worrall v. Munn, 5 N. Y., 229 ; Bank of Metropolis v. Guttschlick, 14 Pet., 29.* The subsequent ratification was so abundantly proved in the present case that I am inclined to treat this error of the Court—if such it was—as immaterial. The subsequent payment by the plaintiff of nearly all the purchase price, and her contracts for the sale of portions of the land, were undisputed, and were such unequivocal acts of ratification as to put that fact beyond controversy. We ought not, I think, to reverse

a judgment for an error which could not possibly have been productive of injury.

The second error complained of is that the plaintiff was allowed to prove by parol that she had paid certain taxes upon the premises, against the objection of the defendant, that the receipts for these payments were the better evidence. We think, however, that the fact of payment of money may always be proved by parol, whether a receipt was taken for it at the time or not. It is true it has been held that if a receipt is given it is an official document which may be used as primary evidence; *Johnstone v. Scott, 11 Mich., 232*; but this does not preclude other proof. On the contrary, the receipt itself, if put in evidence, would be open to contradiction or explanation, by the evidence of persons having personal knowledge of the facts; and the parol evidence can therefore in no sense be regarded as secondary. The receipt, if proved, might save the necessity for calling witnesses, but it could not render them incompetent.

An objection which was taken to evidence by the plaintiff to show sales of the land made by herself, is equally untenable. The Court received this evidence for the sole purpose of showing a ratification by the plaintiff of the purchase made in her name by her husband. For this purpose it was unobjectionable.

Another objection was taken to a ruling by the Court excluding evidence of a deed given upon an auction sale of the same lands made afterwards by the guardian of the owner under an order of the Probate Court. The evidence was offered in order to show that the value of the land, as determined by the public sale, was much less than that testified to by the plaintiff's witnesses, but it appears that the defendant was afterwards allowed to put in evidence the files and records of the Probate Court to show the

same facts proposed to be shown by the guardian's deed, and the error, if any, was thereby cured.

Upon the principal question, the Court below ruled that the plaintiff was entitled to recover "compensation for the loss and injury sustained by the plaintiff in consequence of defendant's breach of contract, and that in estimating the damages upon this principle of compensation, the jury had the entire range from the amount that was paid on the contract, to the highest value of the land that was proven at the time of the breach, less the amount unpaid upon the same." In other words, that the plaintiff was entitled to recover the profits which she would have made by the good bargain she had lost, if such it proved to be.

There is no doubt that the instruction given by the Court is correct as a general rule. Where a breach of contract occurs, the law aims to make compensation adequate to the real injury sustained, and to place the injured party, so far as money can do it, in the same position he would have occupied if the contract had been fulfilled.—*Sedg. on Dams, 174; Robinson v. Harman, 1 Exch., 855; Lock v. Furze, L. R., 1 C. P., 441; Hill v. Hobart, 16 Me., 164; Lewis v. Lee, 15 Ind., 499.*

And where the carrying out of the contract would have given one of the contracting parties the enjoyment of a particular thing, and he has lost it, the damages he will be entitled to, are the value of that which he has lost.—*Ibid.,* and see *Engel v. Fitch., Law R., 3 Q. B., 314.*

To this general rule, which is so entirely undisputed as to make further citation of authorities superfluous, an exception was introduced in the case of contracts for the sale of land, by the decision in *Flureau v. Thornhill, 2 Wm. Bl., 1078.* That case is not so fully stated nor so completely reasoned as would be desirable, but though often criticised on this account, and sometimes questioned, it has

stood the test to the present time, and is the law of England at this day. " Upon a contract for purchase," said Chief Justice De Grey, " if the title proves bad, and the vendor is, without fraud, incapable of making a good one, I do not think that the purchaser can be entitled to any damages for the intended goodness of the bargain which he supposes he has lost." And Blackstone, J., added, " These contracts are merely upon conditions, frequently expressed but always implied, that the vendor has a good title. If he has not, the return of the deposit with interest and costs, is all that can be expected."

Upon this exception to the general rule, subsequent cases have engrafted some other exceptions. The leading one of these cases is *Hopkins v. Grazebrook; 6 B. & C., 31.* In that case it appeared that Hill & Co. had contracted to sell certain premises to one Harwood, and Harwood had contracted to sell to the defendant. A difficulty had sprung up between Hill & Co. and Harwood, but defendant disregarding this fact, and assuming that the difficulty would be arranged and the contract with himself performed, put the premises up at auction, and sold them to the plaintiff. The difficulties, however, were not arranged, and he was sued for breach of his contract. Abbott, Ch. J., said " the defendant should not have taken such a step without ascertaining that he would be in a situation to offer *some* title; and having entered into a contract to sell without the power to confer even the shadow of a title, I think he must be responsible for the damage sustained by a breach of his contract."

In *Lock v. Furze, L. R., 1 C. B., 441,* the defendant, who had a right to grant leases in possession only, made a contract to give one in reversion, and it was held that the plaintiff was entitled to recover for a breach of this

contract damages measured by the value of the lease bargained for.

In *Engel v. Fitch, L. R., 3 Q. B., 314,* the defendants, being mortgagees of a lease, sold it to the plaintiff, undertaking to give possession. The mortgagor refused to surrender possession, and the defendants, though entitled to put him out by ejectment, declined to exercise that right. The Court held the plaintiff entitled to recover full damages, and the Exchequer chamber afterwards affirmed the judgment.—*L. R., 4 Q. B., 659.*

In *Bush v. Cole, 28 N. Y., 261,* auctioneers. having authority to sell at not less than $2,800, sold to the plaintiff at $2,250. The Court was of opinion that although their principal was not bound by the contract of sale, the auctioneers were, and that the measure of damages was the value of that which the contract, if performed, would have assured to the vendee.

*Pumpelly v. Phelps, 40 N. Y., 59,* was a case where a trustee, having power to sell on the written consent of the *cestui que trust,* contracted in his own name without such consent. The *cestui que trust,* refusing to affirm the sale, the purchaser was held entitled to full damages.

The principle underlying these cases is, that if a party enters into a contract to sell, knowing that he cannot make a title, he is remitted to his general liability, and the exception introduced by *Flureau v. Thornhill* does not apply. So if a person undertakes that a third party shall convey, and is unable to fulfill his contract, the authorities are that he shall pay full damages. Such contracts are speculative in character, and the party giving them understands the risk he assumes when the covenant is entered into.—*Dyer v. Dorsey, 1 Gill & J., 440; Pinkston v. Huie, 9 Ala., 252; Gibbs v. Jemison, 12 Ala., 820; Gale v. Dean, 20 Ill., 320.*

HAMMOND v. HANNIN.

There are also numerous cases which decide that if the vendor acts in bad faith,—as, if having title he refuses to convey, or disable himself from conveying,—the proper measure of damages is the value of the land at the time of the breach; the rule in such case being the same in relation to real as to personal property.—*McConnell's heirs v. Dunlap's devisees, Hardin, 41; Gerault v. Anderson, 2 Bibb., 543; Davis v. Lewis, 4 Bibb., 456; Driggs v. Dwight, 17 Wend., 71; Dustin v. Newcomer, 8 Ohio, 49; Adams v. M'Millan, 7 Port., 73; Trull v. Granger, 8. N. Y., 115; Martin v. Wright, 21 Geo., 504; Cox v. Henry, 32 Penn. St., 18·; Burr v. Todd, 41 Penn. St., 206.* And the cases before referred to in which a party undertook to sell that which he did not own, and knew he could not control, may also, where the other party is not informed of the defect, be considered as involving a degree of bad faith, and have generally been so regarded by the courts.

But, on the other hand, if the contract of sale was made in good faith, and the vendor for any reason is unable to perform it, and is guilty of no fraud, the clear weight of authority is, that the vendee is limited in his recovery to the consideration money and interest, with perhaps, in addition, the costs of investigating the title.— *Walker v. Moore, 10 B. & C., 416; Sikes v. Wild, 1 B. & S., 587; Same case, 4 B. & S., 421; Baldwin v. Munn, 2 Wend., 399; Peters v. McKeon, 4 Denio, 546; Conger v. Weaver, 20 N. Y., 140; Allen v. Anderson, 2 Bibb., 415; Goff v. Hawks, 5 J. J. Marsh, 341; Combs v. Tarlton's Admr., 2 Dana, 464; Seamore v. Harlan's heirs, 3 Dana, 410; Herndon v. Venable, 7 Dana, 371; Hall v. Delaplaine, 5 Wis., 206; Foley v. McKeegan, 4 Iowa, 1; Sweem v. Steele, 5 Iowa, 352; Blackwell v. Lawrence Co., 2 Blackf., 143; Thompson v. Guthrie, 9 Leigh, 101; Loomis v. Wadhams, 8 Gray, 557; Dunnica v. Sharp, 7 Mo., 71; McClowry v.*

*Croghan, 31 Penn. St., 22; Dumars v. Miller, 34 Penn. St., 319; Hertzog v. Hertzog's Admr., Ibid., 418; McNair v. Compton, 35 Penn. St., 23; Saulters v. Victory, 35 Vt., 351.*

There are some cases which disregard the exception introduced by *Flureau v. Thornhill,* and which, treating the question of good or bad faith in the vendor as an unimportant circumstance, hold that the measure of damages on breach of a contract to convey lands should be the same as on breach of a contract for a sale of personalty. It is remarkable that, though this general subject has been very fully discussed in the English cases, and in many of the American cases referred to, the cases opposed to them appear generally to have entirely overlooked that discussion, and are evidently decided on first impression and without that investigation and reflection which so important a subject usually receives. The cases of *Hopkins v. Lee, 6 Wheat., 109; Wells v. Abernethy, 5 Conn., 222; Buckmaster v. Grundy, 1 Scam., 310; McKee v. Brandon, 2 Scam., 339; Gale v. Dean, 20 Ill., 320; Cannell v. M'Clean, 6 H. & J., 297; Bryant v. Hambrick, 9 Geo., 133; Whiteside v. Jennings, 19 Ala., 784; Hill v. Hobart, 16 Me., 164; Warren v. Wheeler, 21 Me., 484; Hopkins v. Yowell, 5 Yerg., 305; Barbour v. Nichols, 3 R. I., 187; Nichols v. Freeman, 11 Ired., 99,* are here referred to, and the weight of authority opposed to them is so overwhelming, and rests upon decisions so fully and so carefully considered, that even those who are dissatisfied with the doctrine declare the principle too firmly settled to be disturbed.—See *Engel v. Fitch, L. R., 3 Q. B., 314; Sedg. on Dams., 3d Ed., 188, marg. note·*

One very strong reason for limiting the recovery to the consideration money and interest in cases free from bad faith is, that the measure of damages is thus made to conform to the rule where the party assumes to convey land which he does not own, and an action is brought against

him on the covenants of title, contained in his deed. This reason is made specially prominent in many of the cases, and it cannot be denied that it is an anomaly if the vendee is restricted to the recovery of one sum, when an ineffectual deed is given, but allowed to recover a larger compensation in case the vendor, when he discovers the defect in his title, has the manliness to inform the vendee of the fact, and to decline to execute worthless papers. Had Hammond executed and delivered a deed when it was called for, the present controversy could not have arisen; and his failure to do so, which worked no additional wrong to the vendee, and was all that he could do consistent with good faith and honorable conduct, is the only ground upon which the plaintiff can claim to retain the large damages for the loss of her bargain, which were awarded her in the present case. So long as the rule stands which thus limits the damages in suits upon the covenants of title, so long ought we, also, I think, to adhere to the decisions which restrict the recovery, as above stated, in actions upon contracts to convey.

It remains to inquire whether the vendee in the present case is entitled, under the decisions, to recover damages for the loss of her bargain, either on the ground that the vendor assumed to sell what he knew he did not own, or that he has acted in bad faith. The vendor's good faith in the whole transaction was fully conceded on the trial, and was assumed by the Circuit Judge in his rulings. And the instructions the Judge gave are not based on any supposition that the vendor had knowingly bargained to sell what he did not own. The contrary is clearly inferable from the evidence. It is true the vendor understood that he had not yet obtained the legal title, but he is assumed to have supposed he had the equitable title, and a right to compel the conveyance of a legal title; and the contract

was, therefore, no more of a speculative character than if he had supposed the legal title to have been already vested in him. The general principle does not depend on whether the vendor's supposed title was a legal one or not.—See *Pounsett v. Fuller, 17 C. B., 660.* When, therefore, the Circuit Judge laid down a general rule which made the belief or good faith of the defendant unimportant, and which would give the vendee in every case a compensation for the loss of his bargain, where for any reason the vendor fails to perform, I think he erred, and that the judgment should be reversed and a new trial ordered.

The other Justices concurred.