## PADDOCK *v.* HATCH.

1. SALES—DELIVERY—CONTRACTS—RECEIPTS—EVIDENCE—STATUTE
   OF FRAUDS—CONCLUSIVENESS OF RECEIPT.

   A receipt for part of the purchase price of a printing press,
   given several days after a sale and delivery of the machinery,
   for which the consideration was $500, was not conclusive of
   the statement in the receipt that the press was to be satis-
   factory to the buyer, under testimony of the seller that he
   signed the receipt without reading it, that the contract of
   sale was absolute and that the purchaser made a complete
   examination before accepting the offer.

2. SAME—TRIAL—INSTRUCTIONS.

   The court correctly submitted to the jury the question of the
   weight to be given to the receipt which the purchaser
   claimed he read over to the seller before it was signed.

3. SAME—STATUTE OF FRAUDS—DELIVERY.

   Under the provisions of the statute of frauds, the contract
   became valid when the press was delivered; and the receipt
   was not the only competent evidence of the terms governing
   the sale.

4. SAME—FRAUD—WARRANTY OF CONDITION.

   Where the court charged the jury that if they found in favor
   defendant's contention that plaintiff made fraudulent repre-
   sentations as to the condition of the press, and the buyer
   promptly notified plaintiff that it was unsatisfactory, plaintiff
   could not recover, and further charged that the fact that de-
   fendant retained the press in his possession was not conclu-
   sive of his acceptance if he gave proper notice, the defendant,
   who stated in his testimony that he did not rely much on the
   representations but made an independent examination of the
   press before he bought, it was not prejudiced.

Error to Washtenaw; Kinne, J.   Submitted January
19, 1912.   (Docket No. 75.)   Decided March 12, 1912.

Assumpsit by Harold Paddock against William B.
Hatch for the purchase price of goods sold and delivered.
Judgment for plaintiff. Defendant brings error. Affirmed.

*Bernard B. Selling* and *Frederick G. Gillette*, for appellant.

*Stevens, Graham & Stevens* (*Blum & Sample*, of counsel), for appellee.

STEERE, J. This is an action in assumpsit, brought to recover a balance claimed due on the purchase price of a second-hand Campbell printing press sold by plaintiff to defendant at Ypsilanti, Mich., on November 19, 1908, for the sum of $500.

The case was tried in the circuit court of Washtenaw county by a jury, and a verdict rendered in favor of plaintiff for $445. From a judgment rendered on such verdict, defendant has removed the proceeding to this court by writ of error.

It is undisputed that a sale and purchase of the printing press was negotiated between the parties, by virtue of which defendant took the press into his possession and removed it to his printing office, shortly thereafter paying plaintiff $75 to apply on the same.

It is the claim of defendant that the sale was a conditional or provisional one; that he bought the press tentatively, on approval, led thereto by representations of plaintiff as to its condition and ability to do certain specified work, which proved to be untrue; that he took the property into his possession to try it, with the understanding and agreement that he should keep it and pay $500 for it, provided it proved satisfactory to him. He claims that after trial, and within a reasonable time, he notified plaintiff that it could not do the work as represented, did not prove satisfactory, and that he would not accept it, demanding a return of the $75 he had paid.

It is the claim of plaintiff that the sale was unconditional; that defendant bought the property as it stood "on the floor," after he and his employés had examined it, and after a reduction in the price first asked had been made in order to close the deal; that the $75 was paid a

few days later by defendant, just as plaintiff was about to leave the city, when he called upon defendant, expecting to collect the entire purchase price, but could only obtain the partial payment; defendant promising to send the balance in a few days.

It appears that plaintiff, who was a minor at the time, entered into partnership with two other young men at Ypsilanti, in the fall of 1907, to engage in the publication of a monthly called the "Student World." The press in question was purchased by them at Akron, Ohio, where it had been in previous use, and moved to Ypsilanti for printing this magazine. The publication had an ephemeral life, running from December, 1907, to May, 1908; but four numbers being issued. In the wind-up of its affairs, the assets, including this press, were turned over to the plaintiff to liquidate the business.

Defendant was interested in two papers published in Ypsilanti, and was president and manager of a company publishing the Ypsilanti Daily Press. In the fall of 1908, plaintiff, assisted by Mr. Howard, one of his former partners, succeeded in interesting defendant in the purchase of plaintiff's press. During the negotiations plaintiff represented that this press would do two-color work and register accurately; that it was in good condition, its parts not worn, though second-hand; that it would do work better and more rapidly than the one defendant was then using. Defendant, after looking at plaintiff's press, took his assistant manager and pressman to examine it. Finally a price of $500 was reached between the parties and the machine moved to the office of the Ypsilanti Daily Press, where it was later set up and used for some time. Just what the contract was is a matter in dispute between the parties, as heretofore stated, and an issue of fact.

The press was moved about November 19, 1908. On November 30th plaintiff, who was about to leave Ypsilanti for his former home in Cleveland, called on defendant to

collect payment for the press, and was paid $75, giving the following receipt therefor, which was drawn up by defendant:

"YPSILANTI, MICH., Nov. 30, 1908.

"Received of William B. Hatch check for $75.00 to apply on purchase price of $500 of Campbell cylinder press providing same proves satisfactory.

"H. PADDOCK.

"H. PADDOCK,
    "4417 Carnegie Ave.,
        "Cleveland, O."

The press had then been moved, but not yet installed ready for operation.

The circumstances of this payment are in dispute. It is the claim of plaintiff that, following the sale of his press, he closed out his business and prepared to leave Ypsilanti to return to his former home at Cleveland, Ohio. After completing all arrangements he called at the office of defendant, on November 30, 1908, expecting to get $500 in full payment for the press; that defendant pleaded lack of funds on hand, unusual expenses, and other matters which rendered it impossible for him to make full payment at that time, and finally paid the $75, promising to send the balance in a few days; that plaintiff, expecting to leave that day, was in a hurry to get his goods shipped from Detroit to Cleveland, and finally took the $75, hastily signing the receipt which defendant had prepared without reading it or being informed of its contents, beyond the fact that it was a receipt for $75; that he hurried away in order to take the train, and had no knowledge at that time of any provision in the receipt relating to the press proving satisfactory; that the balance of the money, $425, was not sent to him in a few days as promised, and has never been paid.

It is defendant's contention that on the day in question, before the press was installed, plaintiff came to him stating that he was moving his goods to Cleveland; could take them at a lower rate on the steamboat line, if he could

get some money to pay freight.   He was anxious to do so and get away, and importuned defendant to pay him some money on the press; that defendant demurred, claiming the press had not been installed and tested, and he had no knowledge whether it would ever prove satisfactory or not; that he had been to considerable expense already in connection with it, and he did not wish to make payment for it until it was accepted, after being tested according to the terms of the contract; that on being importuned by plaintiff, who suggested that the press was security for at least $75 anyway, he finally paid him that amount, taking the receipt which was offered in evidence, of the contents of which plaintiff had full knowledge; it having been read to him before he signed it.

In the early part of December, 1908, defendant wrote plaintiff advising him that the press, after trial, proved deficient, was not as represented, and would not do the work plaintiff had claimed, and made a proposition to settle the matter for $250.   This letter was not produced; but in a subsequent letter defendant wrote:

"As I wrote you before, the only reason I had for making such a proposition as to $250 even, is because I felt you might prefer such a proposition and I would undertake with experts available at Detroit and the Scharf Tag Press here to get through the winter somehow with this press and then give my attention to something else on my return in the spring."

The offer was not accepted.   Various letters were written and the claim eventually placed in the hands of attorneys.

It is the claim of the defendant that the machine was old, worn, and practically worthless.   On the trial much testimony was introduced as to its condition and value. After having the machine overhauled and repaired in December, defendant's company used it until the following September, doing on it all the work of publishing a daily and weekly paper, when a new, improved press was purchased to take its place.   Press work on the daily

paper, when done for a short time by others while this machine purchased from plaintiff was being installed, cost $4.50 per day.

Several of defendant's assignments of error are based on a refusal of the court to give requests predicated on the assumption that the receipt of November 30th, signed by plaintiff, is conclusive, and to be interpreted by the court as evidencing the only contract between the parties.

The case of *Price* v. *Marthen*, 122 Mich. 655 (81 N. W. 551), upon which defendant relies in this contention, is distinguishable from the present case in the particular that the writing there sought to be disputed was a contract in duplicate, signed by both parties, setting forth the agreement in detail. The defense claimed that it was obtained by fraud and false representations while defendant was intoxicated, and that the machine was not as represented. The court said:

"The defendant had ample opportunity to read it. * * * He knew that it was to be sent by the agent to the plaintiffs, to be acted upon by them. It contained definite promises of payment, and provided for an absolute sale. It was unambiguous. There was nothing in it about commissions. The law does not protect one against his own folly. The case is clearly within the rule of law that written contracts cannot be varied by evidence of prior or contemporaneous parol agreements."

This does not conflict with the general rule that a receipt is not necessarily conclusive, but may be explained or contradicted.

It is the testimony of defendant that a conditional sale of the property was made before or at the time it was moved. He testifies:

"I consequently arranged with him to move the press and set it up on our floor, and if it proved what it was represented we were to pay him $500 for it."

His testimony does not show a new contract made when the receipt was given. He says:

"I finally gave him $75.   I told him I wouldn't do it, unless he sign a receipt showing the conditional sale."

The most that can be claimed for the receipt is that it furnishes written acknowledgment, signed by plaintiff, of the previous contract, as defendant claims.   It has been more than once held by this court that similar receipts may be contradicted or explained.

The court correctly left the weight and import of the receipt to the jury as a question of fact, under the conflicting testimony touching the circumstances surrounding its signing.   *Hammond* v. *Hannin,* 21 Mich. 374 (4 Am. Rep. 490); *McAllister* v. *Engle,* 52 Mich. 56 (17 N. W. 694); *Hart* v. *Gould,* 62 Mich. 262 (28 N. W. 831); *French* v. *Newberry,* 124 Mich. 147 (82 N. W. 840); *Bidwell* v. *Railway Co.,* 148 Mich. 524 (112 N. W. 122).

It is the contention of defendant that, under the statute of frauds, there could be no valid contract until November 30th, when the $75 was paid; the value of the property being in excess of $50, and there being no memorandum in writing.   Counsel for defendant say in their brief:

"At the time that plaintiff claims an actual and unconditional bargain was made to pay $500 as a purchase price, there was neither part payment nor delivery or acceptance, nor any contract in writing.   At that time the alleged contract was not valid.   When did it acquire validity?"

Plaintiff testified that the conversation by which the arrangement was made took place about the 18th of November, and "Mr. Hatch undertook to remove the printing press almost immediately, within a day."   The contract would, if made as claimed by plaintiff, acquire validity on delivery.

The claim also is made—

"That the transaction was induced by material representations, fraudulently made, to induce defendant to enter into the transaction, and that he relied upon the same."

Error is assigned on the refusal of the court to give several of defendant's requests presenting that proposition in various forms. On that subject the court gave the following instruction based on defendant's theory of a conditional contract:

"Now, if from the evidence in this case you find that the claim and contention of the defendant is proved and established that these representations or any of them were false and untrue, and that the press was unsatisfactory to the defendant, and that he promptly notified the plaintiff of such fact, then there can be no recovery in this case, and your verdict should be for the defendant, no cause of action."

Referring to the fact that defendant allowed the press to remain in his possession and used it, the court said:

"That would not in itself necessarily create an acceptance on the part of the defendant, provided that he promptly notified the plaintiff that the press was unsatisfactory, and that it failed to answer the conditions of the sale. Notice that it was unsatisfactory would be sufficient in this case, especially in view of the nature and character of the press, and that its redelivery was impracticable."

Counsel for defendant urge that he—

"Was entitled to have the issues of false representations and conditional purchase submitted separately to the jury, and the judge, in our opinion, should not, even if there were a case for the jury, have coupled the two defenses, making the proving of each essential to the success of defendant's defense."

It is the claim and testimony of defendant that the sale was conditional; that he took the press into possession under an agreement to purchase and pay $500 for it if it proved satisfactory to him. He testifies as to plaintiff's representations:

"I did not take his word entirely for it. I would not have bought it so. Went up to look at it, though telling him I knew nothing about printing presses, and saw what it was; then I had Mr. Maddox and Mr. Handy go

with me and look at it the night I spoke of. Don't say I didn't put any confidence in them—'the representations;' but I naturally went up to look at the press to see what he was talking about. I didn't rely very much on these representations. I examined the press."

It seems difficult to reconcile such testimony with a claim that defendant took the press relying on representations made by the plaintiff. The instructions given on that subject were fully as favorable to defendant as the testimony warranted. We find no reversible error in the rulings of the court admitting and rejecting testimony against defendant's objections.

The two controlling issues in this case were issues of fact. They were, *first*, the terms of the contract between the parties, put in issue by the testimony of plaintiff and Howard on the one side and of defendant on the other; *second*, the circumstances of signing the receipt for $75, in relation to which plaintiff and defendant gave contradictory versions. As to this, the court, among other things, said:

" The defendant insists that it is conclusive evidence of the real contract between the parties. The plaintiff, on the other hand, insists that he signed it hastily, not knowing its contents. This is a matter, gentlemen, which you must determine; that is, the truth of it must be determined from the evidence."

All other testimony in the case was material only in so far as it threw light on those two contentions. We think the court submitted those issues of fact to the jury under instructions which were plain, clear, and correct, fully covering the case and containing all the essential elements found in defendant's requests which were pertinent to the controversy.

The judgment is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.