### JESSE A. COMBS *vs.* EDWIN SCOTT & others.

Services rendered for hire in procuring recruits and enlisting them into the military service of the United States in time of war are not contrary to public policy, although the person rendering them has no interest, except under his contract, in filling the quota of the town towards which they are credited; and an action may be maintained to recover a sum agreed to be paid for such services.

Ratification of the unauthorized acts of one who assumes to be an agent, in order to render them binding on the principal, must have been made with full knowledge of all material facts; and ignorance of such facts, whether it arises from want of inquiry by the principal, and neglect to ascertain the facts, or from other causes, will render an alleged ratification ineffectual and invalid.

CONTRACT, brought to recover the price agreed to be paid to the plaintiff for his services in obtaining two recruits and securing their enlistment into the military service of the United States, as a part of the quota of the town of Hawley.

At the trial in the superior court, before *Lord,* J., the plaintiff introduced evidence tending to show that in August 1864 the defendants had charge of a fund committed to them for the purpose of obtaining recruits for said town in such service, and that they were engaged in that work and employed one Dunton as their agent, who was authorized by them to employ the plaintiff in their behalf, and did so employ him, agreeing to pay $550 for each recruit that he should obtain, to the number of two or three ; and that, if no previous authority had been given to Dunton to employ the plaintiff in their behalf, they ratified the employment of the plaintiff after being informed that he had procured two recruits and secured their enlistment upon the quota of Hawley, and agreed to pay him $1100 therefor. There was conflicting evidence in respect to these matters, and the defendants also introduced evidence tending to show that, if the defendants made a formal ratification of the act of Dunton in employing the plaintiff, it was done under a misapprehension and mistake as to material facts, referred to in the prayers for instructions.

The defendants requested the following instructions, amongst others:

1. Services rendered for hire, as a broker or agent, in procuring recruits and enlisting them in the military service by one who had no other interest in filling the quota of the town towards which they were credited, do not furnish a legal cause of action to recover the price.

2. Ratification is not effectual unless made with full knowledge of all material facts. In this case, it would be a material misapprehension if the defendants supposed Dunton waived any claim in his own behalf, in favor of the plaintiff, or if the plaintiff's agent misrepresented the day of putting in the men, and there was meanwhile a change of price.

3. If there was such a material mistake, it makes no difference how it arose, or whether the defendants might have ascertained the contrary to be true.

The judge declined to give the first of the above instructions; he gave the second, adding, after the words "in favor of the plaintiff," the following words: "when in fact he had not done it;" and he gave the third, adding at the end, "unless it arose from the negligence of the defendants."

The jury returned a verdict for the plaintiff, with $1201.75 damages; and the defendants alleged exceptions.

*C. Allen,* (*W. Griswold & S. T. Field* with him,) for the defendants, upon the first point, cited *Fuller* v. *Dame,* 18 Pick. 472; *Frost* v. *Belmont,* 6 Allen, 152; *Marshall* v. *Baltimore & Ohio Railroad,* 16 How. 314; *Tool Co.* v. *Norris,* 2 Wallace. 45; Addison on Con. (2d Amer. ed.) 94; Phillim. Jurisp. 60–69; and, on the second point, the same authorities cited for the defendants in the preceding case.

*D. Aiken,* for the plaintiff. 1. There is nothing in the case to show that the plaintiff acted as a broker. He simply undertook to render certain services at a stipulated price. If it was not illegal for the defendants to procure recruits, it is difficult to perceive how it should become illegal for them to employ an agent to do the same for them. 2. It is not true, as a legal proposition, to say that, if there was a material mistake, it makes no difference how it arose. It does make a difference. The law requires reasonable diligence in every party making a contract,

to prevent mistakes, and a party cannot avail himself of a mis= take arising from his own negligence. See 1 Story on Eq. § 146.

BIGELOW, C. J. There was nothing in the nature of the services rendered by the plaintiff, for which he seeks to recover compensation in this action, which contravened public policy, or which taints the cause of action against the defendants with illegality. The evidence at the trial did not show that the plaintiff exercised or carried on any particular trade or calling which made the legal appellation of broker applicable to him. It only appeared that he undertook to render certain specific services at the request of the defendants, at a stipulated price. He was a special agent for a particular purpose. Nor can we see that any infraction of good morals, or of the good order and welfare of society, or of any public or private duty, was necessarily involved or likely to occur by reason of the performance of the services which the plaintiff was employed to render. At the time the alleged contract was entered into, it was not only competent for towns and cities to procure recruits and secure their enlistment into the military service of the United States to the extent of the quotas allotted to them respectively, but it was their clear and manifest duty to adopt all reasonable and proper means to effect this object with certainty and dispatch. Inasmuch as a municipal corporation can act only through agents, the employment of persons to act immediately in their behalf, or to procure others to act as sub-agents who could more efficiently render the required service, was a measure of obvious necessity and propriety, entirely consistent with the due performance of the legal duty imposed on cities and towns. Nor would it make any material difference if the defendants, instead of being employed by the town to procure recruits for enlistment, were in fact engaged in procuring substitutes for those citizens of the town .vho might be drafted into the military service, as part of the quota of the town. This was a strictly legal employment, in which a person might properly engage, either for himself or as agent for others. The procurement of substitutes in the place of men drafted into military service was expressly authorized

and sanctioned by the act of Congress. U. S. St. of 1864, *c.* **13,** § 4. Clearly, if it was legal and in accordance with public policy for persons liable to military duty to procure substitutes for themselves, there could be no violation of duty or of any rule or principle of law in effecting the same object through the instrumentality of agents. In any aspect which can be taken of this part of the case, it seems to us that the cause of action was legal and valid, and, if established by the evidence, would well warrant a verdict in favor of the plaintiff. The refusal of the court to give the instruction asked for by the defendants in the first request was therefore right.

But, upon another point, we are of opinion that the exceptions of the defendants are well taken. In instructing the jury on the question of ratification by the defendants of the contract alleged to have been made by their agent in excess of the authority granted to him, the judge in effect told the jury that such ratification would be binding on the defendants, though made under a material misapprehension of facts, if such misapprehension arose from the negligence or omission of the defendants to make inquiries relative to the subject matter. In the broad and general form in which this instruction was given, we are of opinion that it did not correctly state the rule of law, and that the jury may have been misled by it in the consideration of this part of the case.

The general rule is perfectly well settled, that a ratification of the unauthorized acts of an agent, in order to be effectual and binding on the principal, must have been made with a full knowledge of all material facts, and that ignorance, mistake or misapprehension of any of the essential circumstances relating to the particular transaction alleged to have been ratified will absolve the principal from all liability by reason of any supposed adoption of or assent to the previously unauthorized acts of an agent. We know of no qualification of this rule such as was engrafted upon it in the instructions given to the jury in the present case. Nor, after considerable research, have we been able to find that such qualification has ever been recognized in any approved text writer or adjudicated case. And, upon

consideration, it seems to us to be inconsistent with sound principle.

Ratification of a past and completed transaction, into which an agent has entered without authority, is a purely voluntary act on the part of a principal. No legal obligation rests upon him to sanction or adopt it. No duty requires him to make inquiries concerning it. Where there is no legal obligation or duty to do an act, there can be no negligence in an omission to perform it. The true doctrine is well stated by a learned text writer: " If I make a contract in the name of a person who has not given me an authority, he will be under no obligation to ratify it, nor will he be bound to the performance of it." 1 Livermore on Agency, 44. See also Paley on Agency, 171, note *o*. Whoever, therefore, seeks to procure and rely on a ratification is bound to show that it was made under such circum· stances as in law to be binding on the principal, especially to see to it that all material facts were made known to him. The burden of making inquiries and of ascertaining the truth is not cast on him who is under no legal obligation to assume a responsibility, but rests on the party who is endeavoring to obtain a benefit or advantage for himself. This is not only just, but it is practicable. The needful information or knowledge is always within the reach of him who is either party or privy to a transaction which he seeks to have ratified, rather than of him who did not authorize it, and to the details of which he may be a stranger.

We do not mean to say that a person can be wilfully ignorant or purposely shut his eyes to means of information within his own possession and control, and thereby escape the consequences of a ratification of unauthorized acts into which he has deliberately entered; but our opinion is that ratification of an antecedent act of an agent which was unauthorized cannot be held valid and binding, where the person sought to be charged has misapprehended or mistaken material facts, although he may have wholly omitted to make inquiries of other persons concerning them, and his ignorance and misapprehension might have been enlightened and corrected by the use of diligence

on his part to ascertain them. The mistake at the trial con sisted in the assumption that any such diligence was required of the defendants. On this point, the instructions were stated in a manner which may have led the jury to misunderstand the rights and obligations of the parties.

*Exceptions sustained*