PEOPLE EX REL. SARAH HORN v. WAYNE CIRCUIT JUDGE.

*Boat and vessel law—Bond for restitution.*

Under the terms of the boat and vessel law (Comp. L., ch. 210) the county clerk's approval of the bonds offered on obtaining restitution of a vessel seized for debt, is not reviewable by the Circuit Judge upon affidavits contradicting the evidence on which the bonds were approved.

MANDAMUS. Submitted June 4. Granted June 11.

*H. C. Wisner* and *Ashley Pond* for the writ.

*Geo. H. Lothrop* against.

GRAVES, J. This is a demurrer to an application by relator for a mandamus to require respondent to vacate an order of court of the 27th of May last, ordering relator to give security in addition to such as had been previously given and accepted, under the sanction of the clerk in certain proceedings taken against the steamer "Excelsior," under the water craft law, being chapter 210 of the Compiled Laws.

April 25th, 1878, "The People's Ice Company," a domestic corporation, filed complaint with the clerk against the steamer and set up a lien of $25,000 for damages charged to have been caused by the misconduct of the master of the vessel, and the clerk immediately issued to the sheriff the warrant prescribed by section four of the act, to seize and hold her, and on the same day the sheriff made the seizure as ordered.

On the next day, being April 26, the court on relator's application under section seventeen appointed appraisers, and they shortly after made and reported their appraisal of the vessel at $22,500.

May 2d, the clerk, upon due notice and in accordance with the statute, was applied to for a writ of restitution; and on the next day, being May 3d, the parties by their attorneys together with the person offered by relator as surety, appeared before the clerk to consummate lawful security to obtain the release of the steamer in the manner prescribed by the statute, under which she was seized. The surety was examined on behalf of the complaining company, touching his property and liabilities, and on its request the examination was reduced to writing, subscribed by the surety and filed with the clerk.

On the day following the clerk approved of the surety and accepted the bond which relator tendered, and issued a writ of restitution to the sheriff, and thereupon the steamer was restored.

May 9, 1878, the appearance of relator was regularly entered, and on the 15th she filed her answer to the complaint.

May 27th, the company moved the court on affidavits to direct the giving of additional security, and to order the steamer into the sheriff's custody by special writ until such additional security should be given.

The motion was not based in any extent whatever upon the ground that the security under the bond had become imperiled subsequent to the time it was made, or upon the ground of any change in the responsibility

of the surety, and no such ground was shown. The
proceeding was based solely upon the claim that an affi-
davit made to support it, disproved statements of the
surety made before the clerk, and on which that officer
acted, and established their untruth.

There was no pretense that the clerk had failed to
act fairly and justly, or that his opinion had undergone
any change. Indeed his affidavit was produced and read,
from which it appeared among other things, that from
inquiries and his own knowledge, he remained of opinion
that the surety's property was more valuable than the
latter had represented. The motion was granted and
the court made an order that relator give additional
security to the complaining company to be approved by
the judge; and further, that a special writ issue to the
sheriff to take the steamer and all her equipments and hold
the same until the additional security should be given,
and this is the order which relator asks to have revoked.

The relief prayed for is claimed on two grounds.

*First.* That on a proper construction of the statute
the court had no power to make this order.

*Second.* That chapter 210 is unconstitutional. If the
first position is well taken an examination of the second
will be needless, and it is not desirable to discuss the
validity of the act without strong reason.

The point to be first considered is therefore, whether
after the clerk had brought the taking of security and
release of the vessel to completion pursuant to the stat-
ute, the court possessed the power to intervene as it did,
and upon the exclusive ground that an affiant for the
motion contradicted the sworn facts on which the clerk
made his determination to proceed to oust relator of the
possession which that determination and the security
sanctioned by it, had given her, and moreover make her
right to possession in future depend upon her giving
such additional security as should meet the approval of
the judge.

There is no claim that the statute gives to the judge any cognizance of the proceeding in the first place for fixing and accepting the original security for the release of the vessel, and there is no room for such a claim.

The remedy in question is one purely statutory, and it is unassisted by those presumptions which aid common law jurisdictions. The legislature having undertaken to prescribe the remedy in all its parts by express enactment, is supposed to have designed that the main regulations should be strictly observed and not exceeded upon any judicial views of utility or convenience, and that the duties carefully assigned to one functionary alone, should be discharged by him and not by another.

The duty to fix and accept originally the security for the discharge of the vessel from custody is specifically delegated to the clerk alone. But the very next section confers power on the judge to require additional security in case that already possessed becomes imperiled. This provision is as specific as the other. In the first the power is conferred on the clerk; in the second on the judge. Why so unless it was intended that the duties should be separate and distinct?

The implication is plain that the law designs that the clerk and not the judge shall have cognizance of the first proceeding. The distinction marked so carefully compels the conclusion.

The jurisdiction the judge assumed in hearing the motion and making the order complained of, was therefore appellate and not original, and the proceeding must be defended on that ground if at all.

The power as marked out in the sixteenth section to require additional security, is an independent power and is in substance original and not appellate. It looks to something else than a rehearing or re-examination of a previous determination, and supposes that some change has occurred subsequent to the clerk's decision which warrants a new proceeding by motion and on new facts, and

not a transfer of a pre-existing inquiry from one officer to another.

Considering the ground of the judge's intervention and the state of facts and mode of proceeding, it is apparent that the jurisdiction assumed was not authorized by the sixteenth section.

As previously stated, the judge did not proceed upon the ground that a change had taken place in regard to the sufficiency of the security, but solely upon a contradiction of the evidence on which the clerk had decided in the previous distinct proceeding.

Now, there is no provision which in terms or by implication authorizes the judge to review the clerk's decision on the facts, at all events when the sole complaint is that the evidence on which he acted is open to contradiction.

No course is marked out for any such action. The statute contains no provision for transferring to the judicial cognizance of the judge as an appellate magistrate, the same case with all its facts which the clerk had before him, and it must be presumed that some provision on the subject would have been made if the legislature had intended to confer the jurisdiction. The requisite regulations cannot be interpolated by construction. The fair conclusion is that the clerk's decision on the evidence laid before him was not subject to be set aside by the judge on motion where the only objection was that such evidence was disputed.

A doctrine laid down and supported by high authority has a strong bearing upon the nature of the power confided to the clerk by this statute, and deserves notice.

In *Vanderheyden v. Young*, 11 Johns., 150, 158, Mr. Justice Spencer said "that whenever the law vests any person with a power to do an act, and constitutes him a judge of the evidence on which the act may be done, and, at the same time, contemplates that the act is to be carried into effect, through the instrumentality of agents,

the person thus clothed with power is invested with discretion, and is, *quoad hoc*, a judge," and this was approved by the Supreme Court of the United States in *Martin v. Mott*, 12 Wheat., 19, 32.

In *Allen v. Blunt*, 3 Story, 742, Mr. Justice Story declared that it might "be laid down as a general rule, that, when a particular authority is confided to a public officer to be exercised by him in his discretion upon an examination of facts, of which he is made the appropriate judge, his decision upon those facts is, in the absence of any controlling provisions, absolutely conclusive as to the existence of those facts" and this statement received the unanimous approbation of the Supreme Court in the case of *The United States v. Wright*, 11 Wall., 648. The principle has been often recognized and applied. *Burgess v. Gray*, 16 How., 48, 64; *Town of Venice v. Murdock*, 92 U. S., 494; *Commissioners of Knox County v. Nichols*, 14 Ohio St., 260. See also *Moore v. Olin*, 6 Mich., 328; *Johnson v. Maxon*, 23 Mich., 129. Citations illustrating the application of the rule propounded might be greatly multiplied, but it is not needful to mention others.

The principle enunciated appears to me to maintain the view taken of this case, and to place in a clear light the character of the function required of the clerk.

Without extending the discussion further it is enough to say that the order complained of was unauthorized, and that relator is entitled to the relief prayed.

It becomes unnecessary to refer to the other question.

The other Justices concurred.