## SMYTH v. LYNCH.

1. POWER OF ATTORNEY, CONSTRUCTION OF.

General words of authority in a letter of attorney are limited and controlled by the terms in which specific authority is given.

2. ALLEGATION AND PROOF.

An allegation that the defendant executed and delivered an instrument is sustained by proof that the defendant ratified such execution and delivery by his unauthorized agent.

3. ESTOPPEL—RATIFICATION.

A principal is not estopped to deny the authority of one assuming to

act as his agent, unless, after knowledge of the facts, he has ratified what the agent did, and the proof shows that equity and fair dealing would forbid him to deny his agent's authority.

4. SEALS.

Seals are not necessary to the validity of any contract between parties.

5. NEGLIGENCE.

When there is no legal obligation to act, the question of negligence or diligence is of no importance.

6. VERDICT SHOULD FOLLOW UNDISPUTED PROOF.

Where, under the undisputed proof, the verdict should be for a sum certain or nothing, a verdict for a part of that sum should not be received.

*Appeal from the District Court of El Paso County.*

THE RIVER AND RAIL ELECTRIC COMPANY was doing business in 1889 and the early part of 1890 in Colorado Springs. The dissensions among the parties interested in the company and business reverses led to a litigation out of which the present suit sprung. The disagreement respecting the management of the corporate affairs bred a purpose on the part of the stockholders to start proceedings for the appointment of a receiver. Clement B. Smyth, the present appellant, lived in Delaware, and was a large stockholder in the company. One of the principal persons engaged in the management of the company's business was Edward Ferris, who appears to have been looking after Smyth's interests in the company in Colorado. In evident preparation for the contemplated suit for the appointment of a receiver, Smyth executed a power of attorney to Ferris for certain specific purposes, in the following terms: "My true and lawful attorney for me and in my name to act fully for me in all matters pertaining to the appointment of a receiver for The River and Rail Electric Company, and in all other matters connected with the affairs of said company in which I have an interest as a stockholder in said company, and to do all lawful acts requisite for effecting these premises, hereby ratifying and confirming all that the said attorney shall do therein in virtue of these presents." Shortly afterwards Lynch, the appellee, brought suit against the Rail and Elec-

tric Company to recover money which he had advanced to further its operations. In some manner, which is not fully disclosed, and which it would be needless to state, he seems to have been identified with one Leach, and the two appear to have been opposed to the other faction, which was in the active management of the company's affairs. Lynch sued out an attachment in aid of his suit, and caused the writ to be levied on a large amount of personal property belonging to the corporation. Lynch's suit was begun on the 24th of February, on which day the writ was levied. On the 25th, the company undertook to execute a bond to release the property. In terms the bond provided that if the plaintiff should recover judgment and the attachment be not dissolved, and the defendant company pay Lynch whatever judgment he might recover, the undertaking should be void. This bond was executed by the corporation by Metcalf, its president. Metcalf and Ferris signed the bond as sureties. In addition to the signatures of Metcalf and Ferris, which were personally executed, Ferris signed Smyth's name to the bond by himself as attorney in fact. For some reason, a scroll seal was attached to the signatures of the several parties who executed as sureties. Ferris and Metcalf justified, but there was no justification by Smyth's attorney in fact. There was no attempt by the plaintiff in the present suit to establish any authority to execute the bond for Smyth, except what was conferred by the power of attorney, which has been stated. Ferris was not otherwise Smyth's agent, nor had he, by parol designation or by written authority, any power to act on Smyth's behalf. Matters stood in this way until considerably later in the year of 1890. It is conceded Smyth had no knowledge of the execution of the bond at the time it was given, nor in any event for two or three months after. There is a controversy respecting the exact time at which information respecting the bond first came to Smyth. Ferris, the agent, was unable to state when he first spoke to Smyth about it. Lynch gave testimony tending to show a statement to Smyth respecting it in April or May,

1890.  This Smyth absolutely denies.  He denies ever having had any conversation such as Lynch testified to, and denies any conversation with Lynch about it at that or any other time.  He does state, however, that he acquired knowledge of the giving of the bond in the following fall on his return from Europe.  The knowledge which he obtained did not go so far as to advise him of the character, the form or the terms of the obligation, nor of any facts which would give him much exact information about the instrument, other than the general fact that his name had been signed to some bond which had been given in the course of the litigation about the company's affairs.  Lynch himself in no way testified to any fact tending to show that he gave Smyth any other knowledge than such as would be furnished by the general fact of the execution of a bond in Smyth's name.  It would appear that the contemplated suit for the appointment of a receiver had been started by Smyth, wherein an injunction was given, which led to some correspondence between the parties as to the probable results of the failure of that particular litigation.  Smyth seems to have been informed by a letter from Ferris that if the injunction was dissolved, it might be necessary to give a forthcoming bond in the attachment suit against the company.  In this letter, however, Ferris gave no intimation that it would be necessary for Smyth to sign it, or that he contemplated affixing his name to any such bond or undertaking if it should be given.

On the 19th of May, 1890, Lynch's attachment suit went to judgment against the company in the sum of $11,896.35, and costs, $24.60.  It was appealed and went through various vicissitudes, but was ultimately affirmed for the full sum of the original recovery.  It was not paid, and thereupon Lynch brought this suit on the bond against Ferris and Smyth to recover $14,824.50, with interest from June 5, 1893, at eight per cent on the amount of the original recovery.  It is thus apparent the judgment to which Lynch was entitled against these bondsmen was the full amount of the penalty named

in the bond.   The case went to trial and the jury found a verdict for the plaintiff and assessed his damages at $12,250. Whereupon an appeal was prosecuted to this court from that judgment.

Messrs. ROGERS, CUTHBERT & ELLIS, for appellant.

Mr. R. D. THOMPSON and Messrs. LUNT, ARMIT & BROOKS, for appellee.

BISSELL, J., delivered the opinion of the court.

The first thing to be settled is Smyth's status with reference to the bond.   His signature was affixed by Ferris, who assumed to act as his agent.   If Ferris had authority, no question could arise respecting Smyth's responsibility.   In the aspect which the case assumes on this appeal, it must be conceded Ferris was without the specific designation of authority requisite to the execution of this particular instrument.   The appellee cannot insist on it, because the court instructed the jury that the power of attorney did not authorize him to sign the undertaking.   The appellee took no exception to this instruction, and no question respecting it is presented to this court on any error assigned by him.   On the case as made, it must be assumed the letter did not grant the authority.   By its terms Ferris was authorized to act with reference to all matters pertaining to the appointment of a receiver for the company.   This language can in no manner be construed to authorize the execution of the undertaking sued on.   The letter of attorney contains a general clause authorizing Ferris to act in all other matters affecting Smyth's interests as a stockholder in the company.   According to the usual canon of construction, these general words are limited and controlled by the terms in which the specific authority is granted.   *Billings v. Morrow et al.,* 7 Cal. 171.

At the time the power was executed and sent, Lynch's suit had not been commenced, nor is there anything in the

record to show that such a suit was in contemplation. The disagreement among the parties interested in the company had undoubtedly led up to some negotiations and discussions respecting the commencement of a suit by the stockholders for the appointment of a receiver, whereby their interests were to be protected. The letter of attorney was with reference to this specific matter, and the general clause must be taken to have reference only to matters which would naturally and incidentally arise in the prosecution of such proceedings. We do not think the court erred when it instructed the jury that Ferris was not authorized by the power to execute the undertaking. Since this is our conclusion respecting the only written authority produced, the next inquiry is whether there is any proof of another appointment by Smyth, whereby Ferris acquired the right to act. There is no pretense of an antecedent grant of authority, and if Smyth is in any way to be holden it must be by the application of some other recognized principle embraced in the law of agency. The only possible doctrine which at all affects the question is that of ratification. The appellee seeks to invoke this very thoroughly settled rule, and thereby bind Smyth by Ferris' act. The evidence touching this matter lies within a narrow compass and is easily stated. There is no pretense of an express ratification. Of this no one speaks. There is no testimony tending to show that Smyth at any time, either with or without knowledge of the execution of the instrument, assented to it, agreed to be bound by it, or by act or express words adopted what his assumed agent did. The whole contention respecting the ratification by Smyth rests on his silence and failure to repudiate his agent's act. Whether, so far as Lynch was concerned, he was called on to act definitely, is a matter about which we shall speak farther. According to Lynch's own testimony, when he first told Smyth that he was on the undertaking, Smyth neither repudiated the act nor adopted it. Lynch, according to his testimony, had some conversation with Smyth about their controversy, but he does not contend that he made any at-

tempt to particularize the bond, the suit in which it was given, or relate its terms and substance. There is possibly some room for argument on the query whether what Smyth said, if the jury accepted Lynch's version of the conversation, indicated a knowledge on his part of what had been done and an intention to adopt it, but the general verdict under the instructions given does not resolve the question. It will be remembered Smyth denied this entire conversation. He concedes some general information about the bond came to him in the fall on his return from Europe. Whether this was full enough to advise him of the terms of the instrument, the extent or character of his liability, or the person or persons to be affected by it, in no way transpires. At all events, Smyth did not thereafter inform Lynch or anybody else interested that he would not be bound by what Ferris had done. This is the ratification by which it is sought to make Smyth liable. As the case now stands, it is a ratification by silence. In so far as they are necessarily included in the verdict, it must be conceded the jury settled the questions of fact involved in this inquiry against the appellant. We shall not undertake to disagree with the jury, or so largely discuss the evidence respecting it as to indicate our opinion on the matter. There would be a manifest impropriety in proceeding otherwise, because the case must, under our conclusions, be again submitted to the learned court and a jury, whose province it is to pass on these questions. Recognizing the legitimacy of this restriction, we shall proceed as cautiously as may be with whatever discussions involve questions of fact. Since the case goes back for another trial, we are obligated to express our opinion respecting much which has been presented on this appeal, because similar questions will arise on the subsequent trial, and it is important the law be correctly stated to the jury, whose conclusions on the facts can then be accepted as determinative of the rights of the parties.

The evidence on the subject of the ratification was frequently objected to, and the position is taken that it was

inadmissible under the pleadings. The action was directly on the bond. The complaint averred the execution and delivery of the instrument, assigned the breach in apt terms and prayed the appropriate judgment. The objection is put on the alleged necessity to aver a ratification if the plaintiff relies on such proof to maintain his cause of action. This does not seem to be the law. The execution may be proved in either way, and the one is as effectual as the other to fix a liability on the principal. *Hoosac Mining & Milling Co. v. Donat*, 10 Colo. 529 ; *Hoyt v. Thompson's Executor*, 19 N. Y. 207 ; *Hubbard v. The Town of Williamstown*, 61 Wis. 397.

The circumstances of the execution of the bond are taken by the appellant as affording support to a position which he assumes as to the necessity of a new consideration to support such an instrument. We find no well considered case which would relieve a surety from his obligation, because no new consideration moved to him at the time he executed the obligation, when his execution was concurrent with that of the principal debtor. It is, of course, wholly unnecessary to discuss a class of cases which show a state of facts totally different from the present. If Smyth, the surety, is to be bound in the present instance because he has ratified what his agent has assumed to do for him, he must be taken to have done it at the time when his agent acted and under the conditions which attended the performance. The bond was executed by the agent at the time the property was released to the principal debtor, the Rail and Electric Company. If the release of the attachment would furnish a consideration sufficient to bind the principal, and the advantage to him was adequate in law to make the undertaking valid, the same consideration must be taken to inure to the benefit of the surety, and therefore support the contract into which he has entered. This has been adjudged in several well considered cases, and we find none to the contrary where a similar matter has been involved. *Commercial Bank v. Warren*, 15 N. Y. 577 ; *Drakely v. Gregg*, 8 Wall. 242.

Another matter must be discussed which would seem to

be foreign to the case and irrelevant to our conclusion, but the question has been pressed on our attention in so many different ways as to lead us to conclude the appellant attaches a good deal of importance to the proposition. It bears with considerable force on the principal matter which we make the real basis of the reversal. It also deserves consideration because its elimination will largely tend to simplify the issue on which the jury must ultimately pass and relieve the trial court of some difficulty. There is a very wide difference between a ratification which involves some of the elements of an estoppel *in pais*, and a ratification which follows the act done, whereby no injury has come to the plaintiff who seeks to recover because the other has ratified what his agent has done. In the one case the fact of ratification may be found by the jury, because the principal has failed to repudiate on the receipt of information of what his agent has done. This statement, of course, is subject to some exceptions. It is only given as a general proposition. In the other, no such conclusive presumption follows where there is an absence of proof which shows that equity and fair dealing would forbid the defendant, who was the principal, to deny his agent's authority. It is almost universally held inapplicable where the act is complete before knowledge comes to the principal and the plaintiff is not shown to have been in any wise injured by the principal's failure to act. Such a case presents none of the features which are essential to the application of the doctrine of estoppel. *Breed v. First Nat. Bank of Central City*, 4 Colo. 481; *Union Gold Mining Co. v. Rocky Mt. Nat. Bank*, 2 Colo. 248; *Palmer v. Williams et al.*, 24 Mich. 329; *Brown v. Rouse*, 104 Cal. 672; *Spofford v. Hobbs*, 29 Me. 148.

The present case falls clearly within the line of these decisions. The attachment was levied and the property seized on the 24th of February. It was released on the execution of the bond the next day. The bond was executed by two persons, who brought themselves within the requirements of the statute as householders and freeholders and

worth the penalty specified in the bond. The sheriff was the officer authorized to receive the instrument and release the property, and if the bond was not good without Smyth's signature, and the attorney in fact had no right to sign it, the sheriff himself, with his bondsmen, would undoubtedly be liable to the plaintiff in the action for any resulting damages. Lynch had nothing whatever to do with the acceptance of the bond, the discharge of the property, or the acts of the sheriff about it. The sheriff had a perfect right to act according to his own discretion, and Lynch's remedy, if any, was against him and his bondsmen if he failed in the discharge of his duty. The act was done and the property was released and had been, even according to Lynch's own contention, for some time before Smyth received any information about it. Under these circumstances, it cannot be successfully contended that Lynch was harmed by Smyth's failure to inform him of his repudiation of Ferris' act, even though we take as true Lynch's statements as to the time and circumstances under which he informed Smyth about it.

The resolution of the principal inquiry is in no manner affected by the character of the instrument sued on. The undertaking is provided for by the statute, and is to be taken by the officer on the release of the property. It is a statutory instrument, authorized to be given under certain circumstances, and secures to the debtor certain privileges respecting the possession of his property. The statute does not provide for the execution of these undertakings under seal. In this state a seal is unnecessary to the execution of any instrument by which the title to property is transferred or wherein parties contract with others. Seals were essential at the common law to the due execution of divers instruments, and many refined distinctions were based on this fact in resolving the matter of the liability of parties on contracts into which they had entered. A specialty could not be declared on, like a parol contract, and the matter of consideration was solemnly imported because the seal had been affixed. Because of these and many other differences between special-

ties and parol contracts, the pleader was bound to specify these distinctions, and, when he declared on a parol contract, could not recover on proof of a specialty. The converse rule was of equal force. This led to the establishment of a collateral doctrine, which is undoubtedly supported by many of the earlier cases, to wit, that a sealed instrument cannot be ratified, except by a paper of equal solemnity and bearing the seal of the individual who ratifies it. The tendency of modern times has been to depart from this doctrine, and a very large number of cases can be found in the books which hold the seal wholly unnecessary, both in those cases where a seal is not required and in those cases where a seal must be affixed to the instrument to make it valid. Under the first line of decisions, even though a seal was essential to the validity of the undertaking, the ratification may be by parol, and the principal bound as effectually as if his ratification had been by a sealed instrument. Nearly all agree that where the instrument need not have been originally under seal to be valid, a parol ratification is good as to the sealed instrument. *Ingraham v. Edwards*, 64 Ill. 526 ; *Lawrence v. Taylor*, 5 Hill, 107 ; *Hammond v. Hannin*, 21 Mich. 374 ; *Holbrook v. Chamberlin*, 116 Mass. 155 ; *Peine v. Weber*, 47 Ill. 41 ; *Drumright v. Philpot*, 16 Ga. 424 ; *McDonald & Mills v. Eggleston, Barker & Co.*, 26 Vt. 154.

The more liberal doctrine commends itself to our consideration. The policy of our state has resulted in the abolishment of seals. They are no longer necessary to the validity of any contract between parties. The statute which provides for the release of attached property permits the undertaking to be executed without a seal. The fact that the agent undertook to affix a seal to this document neither adds to its force nor in any manner affects its validity. To hold the principal must execute a sealed instrument to ratify what was perfectly valid without one, is to establish a rule which seems to be destitute of any good reason on which to base it, and a rule which is altogether too technical for this age and for modern times. We therefore conclude as a matter of

law, if a ratification may be found from the facts proved, it will be quite as effectual as though there had been an express adoption of the agent's act over the seal of the principal.

This brings us to the troublesome inquiry whether this ratification was satisfactorily established, and the jury were duly instructed respecting their duty in the premises. We are somewhat restrained in the argument by our purpose not to overstep the boundaries we have set in the discussion of the evidence, that neither the parties nor the court may be embarrassed by the expression of our personal views. Whoever seeks to enforce a contract executed by an unauthorized agent is bound to prove a ratification with full knowledge of all the material facts attending the transaction. Mistake, ignorance, or misapprehension of any of the essential matters will relieve the alleged principal of any responsibility. In these cases, the law lays the same burden of proof on the plaintiff as in those matters of contract executed by an agent who possessed the requisite original authority. As, in the one, he would be bound to establish by satisfactory proof the existence of the power, so, in the other, he must demonstrate an adoption with full knowledge of what has been done in his name and on his behalf. The principal is under no obligation to accept the assumed agent's act. He need neither sanction nor adopt it. The law imposes on him no duty to make inquiries about it. Where there is no legal obligation, the question of negligence or diligence is of no importance. Whoever, therefore, relies on a ratification, is obligated to show it was made under circumstances which in law will bind the principal. The duty of making inquiries and ascertaining what has been done is not cast on the one who is under no legal obligation to take on himself the responsibility, but it rests with the party who would gain a benefit by the enforcement of the contract. The requisite information is justly assumed to be within the reach and control of him for whose advantage the contract was made. Concerning these details the principal is presumed to be a stranger. While he may not close his eyes to what is with-

in his own control, he is not to be charged because he has failed to make inquiries. He may not be held because he was negligent, or because his information might have been enlarged or his misapprehension corrected by diligence to ascertain the facts. *Combs v. Scott et al.*, 94 Mass. 493; *Murray v. Nelson Lumber Co.*, 143 Mass. 250; *Nixon v. Palmer*, 8 N. Y. 398.

This accepted doctrine of the law of agency was ignored by the court in its instructions to the jury. By the twelfth instruction the jury were undoubtedly told they must believe from the evidence that Smyth's alleged ratification was made with a full knowledge of all material facts, but he attached a limitation which destroyed the force and effect of the instruction and imposed a duty on Smyth which is not recognized by the precedents. The court added this clause, "or with such knowledge as he could with reasonable diligence have obtained." From this the jury might have readily concluded it was possible for Smyth, when he learned of the execution of the bond in the fall of 1890, to ascertain, by inquiry of Ferris or of Lynch, the fact of the execution of the bond and all the circumstances attending it, and if they further concluded that he failed to repudiate the act and remained silent respecting his agent's authority, he was holden as upon proof of a ratification with full knowledge. We must conclude the jury were liable to be misled by this statement of the law. The effect of it is apparent. Under the testimony, the jury could legitimately find that Smyth might have obtained full knowledge of all the facts and circumstances attending the execution of the bond, its character and purport, and the proceedings taken under it, by using reasonable diligence in making inquiries about it when the fact of the execution of the bond was first brought to his attention. Reaching this conclusion, it was an easy matter for them to find that Smyth had ratified his agent's acts with a full knowledge of all the material facts. Whatever may have been his ignorance, or his misapprehension, he could have obtained full knowledge by inquiry; the exercise of reasonable diligence would have

led him to make it, and the verdict is but a legitimate deduc-
tion from the findings which could be rightfully made under
that instruction.    The qualification made the instruction
undoubtedly erroneous, and the verdict may not therefore be
accepted as conclusive on the main question of fact.

Ratification cannot be accurately defined as a legal term.
Generically, the word always expresses the same idea, and in
legal effect is always the adoption of the act of one who has
assumed to be an agent without the grant of an antecedent
authority.    In its application to different conditions, legal
accuracy requires the observance of very wide differences in
the significance of the term.    There is a marked difference
between the ratification of the acts of an agent possessing a
general authority to represent the principal, who steps out-
side the usual limits of his business ; or the adoption of what
has been done by one having a special authority which he
has exceeded in the terms of the engagement into which he
entered, which might otherwise have been deemed authorized;
or the liability incurred by the principal, who has permitted
another to be misled by the conduct of his agent, and who
has received the benefits of the transaction or suffered injury
to come to the other, whereby he is estopped, and the case
of a ratification of a completed act performed by one without
authority, where the failure to repudiate worked no injury
and the principal has not accepted or received any benefit
from the transaction.    These distinctions are recognized in
all the cases, and wherever different principles are apparently
expressed, it is due to the application of the general rules of
law governing agency in their application to the varying con-
ditions represented by the different controversies.    The pres-
ent case by proof falls entirely within the limit of the class
of cases last suggested.    Ferris was never authorized by
Smyth to act as his agent in all business transactions, or in
all business transactions of a particular character.    It is not
therefore a case where an agent has overstepped the limits of
an apparent authority, where his act will be presumed to
have been adopted with very slight proof of acceptance on

the part of the principal. Neither was he a special agent deputed to do a particular thing, of which the one under investigation might well be taken to be a part, where a similar amount of proof might suffice to support the plaintiff's right to recover on slight evidence of ratification. Neither is the case brought by the proof at all within the limits of those cases which presume ratification from the silence of the principal after he has procured general knowledge of the act performed, because the one who has relied on the agent's authority has been misled to his prejudice and suffered injury because of the principal's failure to repudiate the agent's acts. It seems to be universally conceded that the principal shall be estopped to deny the agent's authority if the other has been misled to his prejudice, or would sustain injury or loss of property which otherwise would not have fallen on him, had the principal promptly repudiated the agent's act. The jury may never be told, in a case like the present, that they may find the act has been ratified because the principal has failed to repudiate the agency with reasonable promptness after acquiring information of the act. It is doubtless true the jury may take the silence into consideration as a circumstance or matter of evidence and as part of the chain of proof which the plaintiff must produce to establish the ultimate fact on which his recovery depends. The principle was early recognized in the state, in the case of the *Union Mining Co. v. Rocky Mt. Nat. Bank*, cited *supra*. The strength of the circumstance, the force and effect to be given to it, always depend on the situation of the parties at the time the information comes, and the injury which will happen to the plaintiff by reason of the principal's failure to act. *School District No. 6 v. Ætna Ins. Co.*, 62 Me. 330; *Ladd v. Hildebrant*, 27 Wis. 135; *Wisconsin Bank v. Morley et al.*, 19 Wis. 72; *Kerr et al. v. Sharp*, 83 Ill. 199; *De Land v. The Dixon Nat. Bank*, 111 Ill. 323; *Craighead et al. v. Peterson*, 72 N. Y. 279; *Hamlin v. Sears et al.*, 82 N. Y. 327; *Mobile & Montgomery Ry. Co. v. Jay*, 65 Ala. 113.

These and many other cases approve the distinctions which

have been stated. Applied to the case at bar, we find them relevant and controlling. The bond was signed by Ferris without an antecedent grant of express authority. It was neither directly conferred by the power, nor was it within the scope of the special authority which had been theretofore granted. The plaintiff, Lynch, parted with no right, and, according to the present record, lost no claim which he had possessed by virtue of the execution and service of his writ, nor did he, so far as the evidence shows, even at the time when as it is claimed by him he first informed Smyth that he was on the bond, part with any valuable thing, lose any existing right, or suffer damage because of Smyth's failure to immediately repudiate the transaction. Both of the other sureties were then, so far as we know, perfectly solvent. The case, therefore, is an exception to the class of which *King v. Rea et al.*, 13 Colo. 69, is an example. The bond was given to the sheriff under the statute to release property which had been seized by the officer. The plaintiff was not an active party in procuring the acceptance of the bond, nor was he possessed of the right to except to the sheriff's action. He might hold the sheriff liable on his official security for any failure on his part to comply with the statute. There are but two sections of the code which authorize the execution of a bond to relieve a defendant from the effects of the writ. These are sections 97 and 112 of the code. It is unnecessary to give an exact construction of those sections and determine whether, when a bond is given in the form and with the penalty mentioned in the first, it may be held operative, and secure to the defendants the rights provided for by the last. We prefer not to enter on a discussion of this question, because it is unessential to our conclusion. But it may be suggested the writ had been levied and the bond was given to secure the release of the property. The only person who could take that bond, exercise any supervision over it, or discretion about it, accept or refuse it, approve or reject the security, was the officer who was authorized to take it, to wit, the sheriff. In the absence

of any statutory authority to that end, the plaintiff in the suit was remediless to compel the execution of a new bond, the procurement of additional sureties, or in any wise to take advantage of the default of the sheriff, otherwise than by proceeding against the officer himself and his bondsmen. Whether the plaintiff would have a remedy, and what it might be in case the bond became worthless after delivery, we do not inquire. Drake on Attachment, sec. 316 *a;* Wade on Attachment, secs. 183, 184; *People ex rel. v. Wayne,* 39 Mich. 15.

Under these circumstances, it cannot be successfully urged that harm came to Lynch from Smyth's failure to repudiate Ferris' act, even though it be conceded full knowledge came to Smyth of the circumstances attending the making of the instrument. This demonstrates the fatal error into which the court fell when it gave its first instruction to the jury. Therein the jury were told, if they found from the evidence Smyth knew of the existence of the bond shortly after its execution, and thereafter failed within a reasonable time to give Lynch notice that he repudiated Ferris' act, and by reason of this failure, plaintiff was prevented from collecting his debt, such failure,—that is, failure to give notice,—and such silence, might be taken as a ratification of the act. The instruction is bad. There was no evidence tending to show that Lynch lost his debt because of Smyth's failure to notify him that he repudiated what Ferris had done. It is not easy to see what principle of good faith or fair dealing required Smyth either to pursue his inquiries to the extent of acquiring full knowledge about it or to give notice to Lynch that he would not be bound. We must not be understood as holding it error for the court to receive proof on this subject, and submit it to the jury as evidence which may be taken in connection with the other proofs in the case and used as a basis for their finding. We simply hold that silence may not be taken as a ratification. To dispose of all the matters presented to our attention, we need consider but two further matters, which are relatively unimportant.

The plaintiff offered in evidence the entire record in the suit of Smyth v. The River and Rail Co., Leach and Stetson, which, as has already been stated, was brought to procure the appointment of a receiver of the affairs of the corporation. We are not quite able to understand the theory on which this record was produced and offered in evidence. Appellee's contention seems to be that, because in that case Ferris acted on behalf of Smyth, as his agent, and signed a bond to secure the injunction which was prayed for, the jury were entitled to take that circumstance into consideration as an evidence of Ferris' authority to execute the bond in suit. It does not seem to us to have been either relevant or proper. Ferris was especially authorized to act in that proceeding by a power of attorney given for the purpose. What he did was in full execution of his authority and must be taken to have been fairly within the terms of the power granted. Ferris' acts in this particular neither tend to show an authority to execute the present bond, nor in any wise support the appellee's contention that the act was ratified by Smyth's subsequent conduct.

The other matter concerns the verdict of the jury. What we shall say about it is to be taken more as a guide to the court on the subsequent trial than as an absolute expression of the law, or as a suggestion that because of this error, were it the only one, the case would of necessity be reversed. The circumstances under which the same difficulty might occur in another case would not necessarily constitute error, though in all cases resembling the present one the verdict must necessarily deviate from the issue and fail to be an accurate finding on the question which it presents. The suit was on a bond to recover the amount of a judgment, which was capable of exact proof, and which was accurately established by the evidence. The principal and interest amounted to more than the penalty of the bond, which was $15,000. If the plaintiff recovered anything, he was certainly entitled to recover this sum, but the verdict was for $12,250. This is incomprehensible, and on no possible hy-

pothesis did the evidence justify it.   Such a departure of the verdict from the issue has often been held fatal to a judgment.   *Tourtelotte v. Brown*, 1 Colo. App. 408; *Dorsett v. Crew*, 1 Colo. 18; *Hatch v. Attrill*, 118 N. Y. 383; *Moody v. Keener*, 7 Port. 218; *Garland v. Davis*, 4 How. 131; *Parker's Admr. v. Moore*, 29 Mo. 218; *Robeson v. Miller*, 4 Colo. App. 313; Thompson on Trials, vol. 2, sec. 2606.

The trial court should not have permitted the verdict for $12,250 to stand.   On the receipt of it, the jury should have been sent out and instructed to find a verdict for the penalty of the bond, or a verdict for the defendant.   That was the proper place in which to correct the error, and trial courts should not hesitate to exercise their authority in such matters. In the statement preceding the discussion of this proposition, we do not intend to criticise the rule, or in any manner dissent from it.   The question which we desired to reserve is whether, if this were the only error disclosed by the record, it would operate to reverse the case, since it could not by possibility tend to the appellant's prejudice.

For the errors committed by the trial court in instructing the jury, this case will be reversed and remanded.

*Reversed.*